RICHARD BUDD, Plaintiff v. DAVIE COUNTY; GLEN HOWARD; DIANE FOSTER; J. C. CLEARY; BERT BAHNSON and SPURGEON FOSTER, JR., Members of the Board of Commissioners for Davie County; VIRGINIA WALKER and FRANK WALKER, Defendants

No. 9322SC897

(Filed 6 September 1994)

### 1. Zoning § 116 (NCI4th)— county zoning ordinance—standing to challenge

Plaintiff had standing to bring a declaratory judgment action to challenge the validity of an amendment to a county zoning ordinance where plaintiff was an adjacent and nearby property owner who had an easement interest in part of the land that was rezoned.

**Am Jur 2d, Zoning and Planning §§ 1026 et seq.**

**Zoning: validity and construction of provisions of zoning statute or ordinance regarding protest by neighboring property owners. 7 ALR4th 732.**

### 2. Zoning § 93 (NCI4th)— property rezoned from residential and agricultural to industrial special use—invalid spot zoning

A zoning amendment enacted by defendant board of commissioners which rezoned two tracts from residential and agricultural to industrial special use constituted illegal spot zoning, since the rezoning allowed the property in question to be used for a sand dredging operation; the land at issue was a 14-acre tract which was part of a larger 67-acre tract and a half mile, sixty-foot wide strip of land over an 81-acre tract of land; all of the land surrounding the rezoned property was zoned R-A; the rezoning of the property at issue was in direct contravention of the purpose behind the R-A district, which was to exclude commercial and industrial uses; the detriment to the community including noise, dust, traffic, litter, and safety issues outweighed any benefit to the county; and the industrial use in the rezoned tract was incompatible with the quiet residential and agricultural neighborhood.

**Am Jur 2d, Zoning and Planning §§ 146 et seq.**

**Spot zoning. 51 ALR2d 263.**

BUDD v. DAVIE COUNTY

[116 N.C. App. 168 (1994)]

Appeal by plaintiff from order entered 6 July 1993 by Judge James A. Beaty in Davie County Superior Court. Heard in the Court of Appeals 22 April 1994.

On 12 September 1991, plaintiff filed a complaint against defendants alleging that Defendant Davie County's act of rezoning certain property in Davie County from Residential-Agricultural to Industrial, Special Use, by and through its Board of Commissioners, was unlawful, invalid and void. Based on this allegation, plaintiff sought a declaratory judgment that the rezoning was unlawful, invalid and void, an order that the rezoned property revert back to its previous Residential-Agricultural classification, and a permanent injunction compelling Defendant Davie County to disapprove the property owner's application for rezoning. Further, plaintiff sought a mandatory injunction compelling Davie County to rescind the rezoning action of its Board of Commissioners and a preliminary and permanent injunction restraining the owners of the property from using the property for industrial use.

Defendants filed an answer denying that the rezoning action was unlawful, invalid, and void and alleging that plaintiff did not have standing to bring this action. Further, defendant asked the court to dismiss plaintiff's complaint and to "confirm" the validity of the rezoning action.

Subsequently, plaintiff and Defendants Virginia Walker and Frank Walker all moved for summary judgment. On 6 July 1993, Judge Beaty entered an order denying plaintiff's motion for summary judgment, granting defendants' motion for summary judgment, and dismissing plaintiff's complaint. From this order, plaintiff appeals.

*Thomas M. King for plaintiff-appellant.*

*Burns & Price, by Robert E. Price, Jr.; and Pope, McMillan, Gourley, Kutteh & Simon, P.A., by William P. Pope and Lillian D. Michaels, for defendants-appellees.*

ORR, Judge.

This is an action by plaintiff for a declaratory judgment in which plaintiff sought a declaration that a zoning amendment to the Davie County Zoning Ordinance was invalid. The sole issue presented by this appeal is whether the trial court erred in granting defendants' motion for summary judgment and denying plaintiff's motion for sum-

mary judgment. Based on our holding below that the amendment constituted an illegal spot zoning, we find that the trial court did err.

The zoning ordinance at issue is a comprehensive zoning ordinance which classifies all of the property in Davie County into various zoning districts. The two properties at issue are a fourteen acre tract of land that is part of a larger sixty-seven acre tract of land and a strip of land running across an eighty-one acre tract of land that is sixty feet wide and approximately a half of a mile long. Defendant Virginia Walker owns the sixty-seven acre tract of land, and her son, Defendant Frank Walker, owns the eighty-one acre tract of land. The fourteen acre tract is adjacent to the Yadkin River and is the northernmost point of Davie County. The eighty-one acre tract of land is adjacent to the sixty-seven acre tract of land on the east.

Prior to 1991, both the sixty-seven acre tract and the eighty-one acre tract of land were zoned as Residential-Agricultural Districts ("R-A"). Subsequently, on 18 April 1991, Virginia Walker submitted an application for an amendment to the zoning ordinance to the Davie County Board of Commissioners (the "Board") pursuant to Article XIII, Section 4 of the zoning ordinance. In this application, Virginia Walker asked the Board to rezone the fourteen acre tract from R-A to "Industrial I-4 Special Use Zoning" ("I-4-S"). As required by Article VIII, Section 2 of the zoning ordinance, which section describes the procedure for applying for a "special use district zoning," Virginia Walker stated in her application that the reason for the requested rezoning was "[t]o remove sand from the bed of the Yadkin River."

Pursuant to Article XIII, Section 4 of the zoning ordinance, the Davie County Planning Board reviewed Virginia Walker's application, and on 9 May 1991, the Planning Board voted 4-2 to recommend to the Board of Commissioners to deny the application. On 28 June 1991, Virginia Walker and Frank Walker submitted an amended application for a zoning amendment to the Board. In their amended application, Virginia and Frank Walker added an additional request to rezone the strip of land sixty feet wide and a little over a half of a mile long running from the fourteen acre tract through Frank Walker's property from R-A to I-4-S. This strip of land ran along an already existing farm road. The Davie County Planning Board again recommended 5-1 to the Board to deny the amendment to the zoning ordinance.

On 19 August 1991, the Board, at its regular meeting, held a hearing on the issue of rezoning the Walkers' land pursuant to Article XIII, Sections 1 and 2 of the zoning ordinance. Subsequently, the Board

voted 3-2 to approve the zoning amendment request with the restrictions that (1) the trucks hauling sand could only run from 7:00 a.m. to 4:00 p.m. and (2) only twenty-five trucks per day, five days a week, Monday through Friday, could haul sand off the property. Prior to this rezoning, all of the Walker property, including Frank Walker's property, was used for agricultural purposes.

Further, the evidence shows that the approximately four to five mile route from the sand dredging operation to Hwy. 801 that the trucks hauling sand would follow is bounded by land zoned either Residential, R-20, single family residential, or R-A. There is no property zoned as Industrial, I-3 or I-4, until the route intersects with Hwy. 801. Further, the land east and west of the fourteen acre tract that is bounded by the Yadkin Valley River is also zoned R-A.

Subsequently, plaintiff owns approximately 400 acres of land adjoining Frank Walker's property on the east. All of plaintiff's land is zoned R-A and is being used for agricultural purposes. In addition, plaintiff has an easement over a portion of the strip of land on Frank Walker's property that was rezoned from R-A to I-4-S.

## I.

[1] First, before we can address the merits of this appeal, we must determine whether plaintiff had standing to bring this action. Our Supreme Court stated the applicable rule in *Godfrey v. Zoning Bd. of Adjustment of Union County, N.C.*, 317 N.C. 51, 66, 344 S.E.2d 272, 281 (1986):

A suit to determine the validity of a city zoning ordinance is a proper case for a declaratory judgment. G.S. 1-254 . . . . The . . . owners of property in the adjoining area affected by the ordinance, are parties in interest entitled to maintain the action.

(Citations omitted.)

The present action is a declaratory judgment action wherein plaintiff seeks to challenge the validity of an amendment to the zoning ordinance. Plaintiff is an adjacent and nearby property owner who has an easement interest in part of the land that was rezoned. Thus, we conclude that plaintiff had standing to bring this action based on the law as cited in *Godfrey*. *See also Blades v. City of Raleigh*, 280 N.C. 531, 544, 187 S.E.2d 35, 42 (1972) ("The plaintiffs, owners of property in the adjoining area affected by the ordinance, are parties in interest entitled to maintain" a declaratory judgment action attack-

ing the validity of the ordinance.); *Concerned Citizens of Downtown Asheville v. Board of Adjustment of Asheville*, 94 N.C. App. 364, 366, 380 S.E.2d 130, 132 (1989) (stating that allegations that plaintiffs were nearby or adjacent property owners, although insufficient alone to support standing to appeal a decision of a board of adjustment under N.C.G.S. § 160A-388(e), "might be sufficient to challenge the validity of an amendment to the ordinance itself in a declaratory judgment action" based on *Godfrey*, 317 N.C. 51, 344 S.E.2d 272).

## II.

[2] Next, we must determine whether the trial court erred in granting defendants' motion for summary judgment and denying plaintiff's motion for summary judgment. "[S]ummary judgment can be appropriate in an action for a declaratory judgment where there is no genuine issue of material fact and one of the parties is entitled to judgment as a matter of law." *North Carolina Ass'n of ABC Bds. v. Hunt*, 76 N.C. App. 290, 292, 332 S.E.2d 693, 694, *disc. review denied*, 314 N.C. 667, 336 S.E.2d 400 (1985) (citation omitted). In the present case, the facts are undisputed. The only issue is whether the zoning amendment was unlawful, invalid and void.

The undisputed facts show that the Board rezoned the fourteen acre tract and the half mile long strip of land specifically for a sand dredging operation under the I-4 District and not for any other conforming use found under the I-4 District. For the distinction between "general use" zoning and "special use" zoning, see Article VIII, Section 2 of the Davie County Zoning Ordinance. The zoning amendment is, therefore, an example of conditional use zoning. *See Chrismon v. Guilford County*, 322 N.C. 611, 618, 370 S.E.2d 579, 583 (1988) ("[C]onditional use zoning occurs when a governmental body, without committing its own authority, secures a given property owner's agreement to limit the use of his property to a particular use or to subject his tract to certain restrictions as a precondition to any rezoning.")

" 'In order to be legal and proper, conditional use zoning, like any type of zoning, must be *reasonable, neither arbitrary nor unduly discriminatory, and in the public interest.*' " *Covington v. Town of Apex*, 108 N.C. App. 231, 235, 423 S.E.2d 537, 539 (1992), *disc. review denied*, 333 N.C. 462, 427 S.E.2d 620 (1993) (emphasis added) (quoting *Chrismon*, 322 N.C. at 622, 370 S.E.2d at 586.

Although the [C]ourt may not substitute its judgment for that of the City's legislative body concerning the wisdom of imposing restrictions upon the use of property within its jurisdiction, the Court may determine whether the rezoning ordinance was adopted in violation of statutorily required procedures, "or is arbitrary and without reasonable basis in view of the established circumstances."

*Hall v. City of Durham*, 88 N.C. App. 53, 59, 362 S.E.2d 791, 794 (1987), *aff'd*, 323 N.C. 293, 372 S.E.2d 564 (1988) (quoting *Blades*, 280 N.C. at 550-51, 187 S.E.2d at 46).

In the case *sub judice*, plaintiff contends that the conditional use zoning was unreasonable and improper based on the argument that it constituted an illegal "spot zoning." We agree.

In North Carolina, unlike in the majority of jurisdictions, "spot zoning practices may be valid or invalid depending upon the facts of the specific case." *Chrismon*, 322 N.C. at 626, 370 S.E.2d at 588.

Accordingly, in this case, and indeed in any spot zoning case in North Carolina courts, two questions must be addressed by the finder of fact: (1) did the zoning activity in the case constitute spot zoning as our courts have defined that term; and (2) if so, did the zoning authority make a clear showing of a reasonable basis for the zoning.

*Id.* at 627, 370 S.E.2d at 589; *See also Mahaffey v. Forsyth County*, 99 N.C. App. 676, 680, 394 S.E.2d 203, 206 (1990), *aff'd per curiam*, 328 N.C. 323, 401 S.E.2d 365 (1991).

Our Supreme Court defined "spot zoning" in *Blades*, 280 N.C. at 549, 187 S.E.2d at 45:

A zoning ordinance, or amendment, which singles out and reclassifies a relatively small tract owned by a single person and surrounded by a much larger area uniformly zoned, so as to impose upon the small tract greater restrictions than those imposed upon the larger area, or so as to relieve the small tract from restrictions to which the rest of the area is subjected, is called "spot zoning."

"An essential element of spot zoning is a small tract of land owned by a single person and surrounded by a much larger area uniformly zoned." *Covington*, 108 N.C. App. at 237, 423 S.E.2d at 540.

In the present case, the evidence undisputably shows that the area rezoned is a relatively small tract of land and a small strip of land, each individually owned and each surrounded by a much larger area uniformly zoned as R-A. Further, the rezoning relieved the small tract and strip of land from restrictions imposed on the larger surrounding tracts. Thus, we find that the rezoning did in fact constitute "spot zoning." The next question raised is, therefore, whether the zoning authority made a clear showing of a reasonable basis for the zoning. *Chrismon*, 322 N.C. at 627, 370 S.E.2d 589.

The North Carolina Supreme Court has enumerated several factors that are relevant to a showing of the existence of a sufficient reasonable basis for spot zoning.

1. The size of the tract in question.

2. The compatibility of the disputed action with an existing comprehensive zoning plan.

3. The benefits and detriments for the owner, his neighbors and the surrounding community.

4. The relationship of the uses envisioned under the new zoning and the uses currently present in adjacent tracts.

*Covington*, 108 N.C. App. at 238, 423 S.E.2d at 541 (citing *Chrismon*, 322 N.C. at 628, 370 S.E.2d at 589).

"The first factor is the size of the tract in question." *Covington*, 108 N.C. App. at 238, 423 S.E.2d at 541. The land at issue is a fourteen acre tract of land in Davie County adjacent to the Yadkin River that is part of a larger tract of land that is sixty-seven acres and a half mile, sixty foot wide strip of land over an eighty-one acre tract of land. All of the land surrounding the rezoned property is zoned as R-A.

"The second factor is the compatibility of the disputed action with an existing comprehensive zoning plan." *Id.* "Zoning generally must be accomplished in accordance with a comprehensive plan in order to promote the general welfare and serve the purpose of the enabling statute." *Mahaffey*, 99 N.C. App. at 682, 394 S.E.2d at 207.

In the present case, the applicable comprehensive zoning plan sets out the intent behind the property zoned R-A in Article VII, section 1.1:

Intent—The R-A Residential-Agricultural District is established to maintain a rural development pattern where single-family housing dwellings are intermingled with agricultural uses.

Generally, housing will be separated from one another by open fields or wooded areas. The impact of one homeowner's activities on his neighbor's will be less than if the property owners were located side by side in a subdivision. Consequently, the property owner may have more freedom to use his land as he sees fit. Therefore, some limited commercial uses will be permitted along with residential and agricultural uses; however, the intent is clearly to exclude commercial and industrial uses or residential subdivisions that require public services (principally water and sewer systems) before they are generally needed in the area.

(Emphasis added.) Thus, the objective set forth for the land zoned R-A is to provide an area where residential and agricultural uses can proceed without disturbing adjacent property owners, but the area specifically prohibits industrial uses. The rezoning of the property at issue, was, therefore, in direct contravention of the purpose behind the R-A District.

"The third relevant factor is the benefits and detriments to the owner, his neighbors and the surrounding community." *Covington*, 108 N.C. App. at 239, 423 S.E.2d at 542. "It has been stated that the true vice of illegal spot zoning is in its inevitable effect of granting a discriminatory benefit to one landowner and a corresponding detriment to the neighbors or the community without adequate public advantage or justification." *Chrismon*, 322 N.C. at 628-29, 370 S.E.2d at 589.

The standard is not the advantage or detriment to particular neighboring landowners, but rather the effect upon the entire community as a social, economic and political unit. *That which makes for the exclusive and preferential benefit of such particular landowner, with no relation to the community as a whole, is not a valid exercise of this sovereign power.*

*Id.* at 629, 370 S.E.2d at 590 (emphasis in original) (citation omitted).

In the present case, defendants contend that "[t]he benefits [from the rezoning] are very significant to the area, while any detriments will be controlled by the use limitations." Defendants allege as benefits that the rezoning will increase revenues in Davie County, allow the state and county to use local resources of sand to build the interstates, roads, and other large public works projects in the area, and that the sand dredging operation has helped the water treatment facilities in Salisbury, which is in Rowan County.

The evidence in support of the alleged increased revenue to Davie County is that at the first meeting before the Planning Board, when asked what income the town could expect from the rezoning, William Hall, the attorney for the Walkers, stated that "there would be tax revenue from the plant. Other than that, he did not know of any. After more discussion, it was decided that there was no sales tax generated on the sale of sand." In addition, at the first Planning Board meeting, a potential employee for the sand dredging operation stated that he and other employees, as residents, would be spending much of their income in the county.

The evidence also shows, however, that 90% of the sand would be bought and transported by American Concrete, and, although American Concrete has several branches in North Carolina and a home office in Statesville, American Concrete does not have offices or plants in Davie County. Further, the evidence shows no roads or public work projects in Davie County that are presently benefitting from the sand dredging operation. In fact, the vice president in charge of maintenance and operations for American Concrete testified that none of the sand dredged from the Walker property had been used in the construction of the I-40 bypass and that he was not aware of any other major highway construction projects in either Davie County or any adjacent county. Although the vice president for American Concrete did know of "some bridgework that's going on," he stated that American Concrete was not supplying concrete manufactured from the sand for this work.

The detriment to the community is that the rezoning allows up to twenty-five 72,000 pound trucks filled with sand to drive from the sand dredging site through the residential community five days a week. All of the area surrounding the rezoned land and the area surrounding the routes the trucks hauling sand would drive are residential and agricultural areas. There is no industry in the area before reaching Hwy. 801, which is approximately four to five miles from the sand dredging site. Further, at the first Planning Board meeting, several local residents expressed their concern over the safety of their children with these trucks driving through their community. One school bus driver stated that there were several children in the area and that "[d]riving the school bus with the trucks on the road is a nightmare for her." Subsequently, at the first Planning Board meeting the Planning Board voted 4-2 to deny the rezoning based on the fact that the "economic aspect" of the community would not be improved by rezoning.

At the second Planning Board meeting, one local resident stated that she had problems with the truck drivers littering, with the dishes in the cupboard shaking when the trucks went by, and with dust coming in the house from the trucks. Another resident stated that he could not eat outside, hang clothes on the line or open the windows and doors because of the dust from the trucks. Further, Norris Collier, who has lived in the area for five years, stated "when the sand trucks were running it was a different world from the usual quite [sic], peaceful neighborhoods for everyone on Yadkin Valley, Jesse King, Sparks and Griffin roads." He stated that "he was first to complain about damage the trucks were doing to the area roads." Mr. Collier also stated that "[l]ast year the County paid $95,000 dollars to repair these roads which caused a deficit in the County budget with no revenue returning from the sand companies. He added that the trucks would tailgate and dump large amounts of sand on the road."

In addition, a board member at the second Planning Board meeting stated that "he had visited the neighborhood and found it to be beautiful and quite [sic]. He had also talked with other people about the ecological effect of pumping sand from the river and found it was of no great ecological value." At this second meeting, the Planning Board voted 5-1 to deny the rezoning. Subsequently, our review of the record leads us to conclude that the detriment to the community outweighs any alleged benefit.

"The final factor listed by the *Chrismon* Court in determining whether or not a reasonable basis exists for spot zoning focuses on the compatibility of the uses envisioned in the rezoned tract with the uses already present in adjacent tracts." *Covington*, 108 N.C. App. at 240, 423 S.E.2d at 542. "The compatibility of the uses envisioned in the rezoned tract with the uses already present in surrounding areas is considered an important factor in determining the validity of a spot zoning action." *Chrismon*, 322 N.C. at 631, 370 S.E.2d at 591.

> In determining whether a zoning amendment constitutes spot zoning, the courts will consider the character of the area which surrounds the parcel reclassified by the amendment. *Most likely to be found invalid is an amendment which reclassifies land in a manner inconsistent with the surrounding neighborhood.*

*Id.* (emphasis in original) (citation omitted).

The use envisioned under the rezoning in the present case is a sand dredging operation. Present uses of the property surrounding

IN RE APPEAL OF STROH BREWERY

[116 N.C. App. 178 (1994)]

the subject tract are agricultural and residential. We conclude that the sand dredging operation would destroy the tenor of the quiet residential and agricultural neighborhood. As stated by our Supreme Court in *Chrismon*, "rezoning of a parcel in an old and well-established residential district to a commercial or industrial district would clearly be objectionable . . . ." *Id.*

For the foregoing reasons, we find that the rezoning was an illegal spot zoning and was, therefore, "in excess of the authority" of the Board of Commissioners and invalid. *See Blades*, 280 N.C. at 551, 187 S.E.2d at 46. Accordingly, we conclude that the trial court erred in granting defendants' motion for summary judgment and remand this case for the entry of a judgment granting plaintiff's motion for summary judgment. The zoning classification of the property at issue reverts to the last legal classification of R-A as defined by the Davie County Zoning Ordinance. *See Mahaffey*, 99 N.C. App. at 684, 394 S.E.2d at 208.

Reversed and Remanded.

Judges COZORT and MARTIN concur.