GOOD NEIGHBORS OF SOUTH DAVIDSON, AND LARRY BRUCE SUMNER, SR. v. TOWN OF DENTON

No. 170PA01

(Filed 7 March 2002)

**Zoning— satellite annexation—spot zoning—rural residences and farms designated for industrial use—reasonable basis test**

Defendant town engaged in an improper form of spot zoning when the town designated for industrial use a recently annexed satellite parcel owned by one company in an area zoned by the county for use as rural residences and farms, because the town did not make a clear showing that there was a reasonable basis for its decision when: (1) there is no evidence demonstrating compatibility between the rezoning and an existing comprehensive plan; (2) there is no evidence showing that the town's zoning authority considered the relationship between the envisioned uses of the property and the use present in the adjacent tracts; (3) there is no evidence showing benefits beyond those to the property owner and the town; and (4) there is uncontested evidence of potential detriments to both immediate neighbors and the surrounding community as a whole.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, 142 N.C. App. 391, 544 S.E.2d 275 (2001), reversing an order of summary judgment for plaintiffs entered by Wood, J., on 25 August 1999 in Superior Court, Davidson County, and remanding for entry of summary judgment on behalf of defendant. Heard in the Supreme Court 12 September 2001.

*John D. Runkle for plaintiff-appellants.*

*Paul Rush Mitchell for defendant-appellee.*

ORR, Justice.

This appeal arises out of a land-use dispute in Davidson County. Plaintiffs ("Good Neighbors"), residents of the county and owners of property surrounding the parcel at issue, contend that defendant ("Town of Denton") engaged in an improper form of spot zoning when it designated for industrial use a recently annexed satellite parcel in an area zoned by Davidson County for use as rural residences and farms. We agree, and for the reasons specified below, we reverse the Court of Appeals with instructions to reinstate the judgment of the trial court.

From the outset, we take special note of the unique—and troubling—factual scenario now before us. Historically, spot-zoning controversies have occurred within the confines of a zoning authority's own borders. In those cases, all affected property owners are subject to the discretion of a single zoning decision maker, a circumstance that logically, and reasonably, limits the scope of any evaluation of the disputed zoning's potential for adverse impact.

However, in the case *sub judice*, no such "normal circumstance" exists. The tract of land at issue is not within the conventional boundaries of a town but instead sits in effect as an island some two miles away. In addition, the tract is surrounded not by town property, but by county property that is subject to the authority of a separate zoning entity. Thus, the alleged spot zoning at issue must be scrutinized from two different perspectives: (1) for its potential impact on the Town of Denton, and (2) for its potential impact on neighboring property owners under the control and zoning authority of Davidson County.

A review of the record reveals the following pertinent facts. Piedmont Chemical Industries, Inc. ("Piedmont"), has been the

owner of a fifty-acre parcel of property in Davidson County since 1978. Neither the property nor its neighboring environs were subject to any zoning restrictions until May 1990, when the county zoned the area for rural agricultural purposes (RA2). Sometime after acquiring the land in 1978 but before 1990, Piedmont began operating a chemical-storage facility on its property. Although such an operation would not be considered a conforming use under the county's 1990 zoning ordinance, Piedmont's existing facility was "grandfathered" by the county and was thus exempted from its zoning restrictions.

In 1991, Piedmont attempted to have its property rezoned for industrial use, but the county turned down the proposal. A second attempt was similarly rebuffed in 1994. Although the record fails to explain precisely why the company pursued the change, a review of the various affidavits and depositions submitted to the trial court suggests that Piedmont was contemplating either: (1) expanding its existing chemical storage capacities, (2) adding chemical manufacturing capabilities, or (3) both.

In 1998, pursuant to N.C.G.S. § 160A-58.1, Piedmont submitted a petition to the Town of Denton for the voluntary satellite annexation of the fifty-acre tract in question. The requested annexation is considered a "satellite" annexation because the property's borders are not contiguous with the town's limits. In fact, the property is located over two miles from Denton's closest contiguous border.

Apparently, officials identified as "the county economic development director," "somebody from [the] [C]ommerce [Department in Raleigh]," and Denton's Town Manager, John Everhart, had urged Piedmont to pursue annexation as a means to gain the zoning change. Certainly, all participants privy to the discussions shared the view that unlike the county, the town would prove amenable to meeting Piedmont's zoning needs.

On 20 April 1998, after a public hearing, Denton's Board of Commissioners approved the satellite annexation of the Piedmont tract. Thus, fifty acres of Piedmont property, none of which was contiguous to Denton's borders, was incorporated into the town by a unanimous vote. Six weeks later, the same board voted to zone ten acres of Piedmont's property as light industrial (LI), with the remaining forty acres classified as heavy industrial (HI). As a result of the town's actions, the parcel stands out from its environs in two significant ways: (1) as a part of the Town of Denton, it is an island severed from its municipality by a gulf of county-controlled lands; and (2) as

**GOOD NEIGHBORS OF S. DAVIDSON v. TOWN OF DENTON**

[355 N.C. 254 (2002)]

a neighboring property, it is a parcel of industrial-zoned land enveloped by rural residences and farms. Moreover, as previously noted, there is an additional consequence of the town's actions: the overall geographical area at issue was rendered subject to the competing interests of two separate zoning authorities.

Prior to trial, defendant Town of Denton moved for summary judgment, arguing that there were no genuine issues of material fact in dispute and that it was entitled to judgment as a matter of law. After considering plaintiffs' complaint and defendant's answer, along with submitted affidavits, maps, meeting minutes, and other documents, the trial court concluded that the zoning at issue was both an illegal form of spot zoning and a prohibited form of contract zoning. In consequence, defendant's motion for summary judgment was denied and summary judgment was instead awarded to plaintiffs. Defendant then appealed the trial court's ruling, without objecting to any portion of the trial court's order, which provided that both parties had stipulated that there were no genuine issues of material fact at issue.

Upon review of the order as stipulated, the Court of Appeals reversed, holding that the annexation and subsequent zoning were valid. Good Neighbors then petitioned this Court for discretionary review, *see* N.C.G.S. § 7A-31 (2002), which was allowed on 3 May 2001.

On appeal to this Court, plaintiffs contend, *inter alia*, that the Town of Denton's zoning ordinance for the Piedmont property is precisely the type of spot zoning proscribed in *Chrismon v. Guilford Cty.*, 322 N.C. 611, 370 S.E.2d 579 (1988), the seminal case on the issue. Spot zoning is defined, in pertinent part, as a zoning ordinance or amendment that "singles out and reclassifies a relatively small tract owned by a single person and surrounded by a much larger area uniformly zoned, so as to . . . relieve the small tract from restrictions to which the rest of the area is subjected." *Blades v. City of Raleigh*, 280 N.C. 531, 549, 187 S.E.2d 35, 45 (1972), quoted in *Chrismon*, 322 N.C. at 627, 370 S.E.2d 588-89.[1] The practice [of spot zoning] may be

---

1. Defendant contends that the circumstances of the instant case do not constitute spot zoning because the Town of Denton did not "reclassify" the parcel at issue. In sum, defendant argues that the zoning action at issue was the town's initial attempt to zone the property in any fashion. Therefore, by definition, the town cannot "reclassify" a property that it had not classified in the first place.

In our view, defendant's argument is unavailing because its emphasis is misplaced. For purposes of spot zoning, reclassification is a result rather than an act

GOOD NEIGHBORS OF S. DAVIDSON v. TOWN OF DENTON

[355 N.C. 254 (2002)]

valid or invalid, depending on the facts of the specific case. *Chrismon*, 322 N.C. at 626, 370 S.E.2d at 588. In order to establish the validity of such a zoning ordinance, the finder of fact must answer two questions in the affirmative: (1) did the zoning activity constitute spot zoning as our courts have defined that term; and (2) if so, did the zoning authority make a clear showing of a reasonable basis for the zoning. *Id.* at 627, 370 S.E.2d at 589.[2] Factors relevant to the reasonableness inquiry include, but are not necessarily limited to, the size of the tract in question; the compatibility of the disputed zoning action with an existing zoning plan; the benefits and detriments resulting from the zoning for the owner of the parcel, his neighbors, and the surrounding community; and the relationship between the uses envisioned under the new zoning and the uses currently present in the adjacent tracts. *Id.* at 628, 370 S.E.2d at 589.

We pause to note that the collective breadth of the aforementioned factors also defines the scope of the "reasonable basis" inquiry. A zoning authority cannot satisfy the "clear showing of a reasonable basis" requirement simply by cataloguing the many benefits it received as a result of the zoning change. Rather, the zoning authority must demonstrate that the change was reasonable in light of its effect on all involved. Thus, for purposes of spot zoning, a "reasonable basis" is established when a zoning authority "clearly shows" that the potential benefits to the property owner, his neighbors and/or the surrounding community outweigh the potential detriments to those neighbors and/or the surrounding community as a whole. In the context of this case, we note that an assessment of the zoning's impact on neighbors and the surrounding community must include an evaluation of areas that are: (1) beyond the control of the entity making the zoning decision, and (2) under the control of a different zoning authority.

---

defined by its designating authorities. That a different zoning authority may have been responsible for the zoning change does not alter the fact that the parcel at issue had changed classifications. After all, when a parcel once limited to agricultural uses is transformed into a parcel capable of housing heavy industry, the result cannot be considered anything but a reclassification of that property. Defendant's argument to the contrary, therefore, is unpersuasive.

2. Defendant argues, and the Court agrees, that as a general proposition, a municipality's zoning actions are presumed to be reasonable and valid. *See e.g., Schloss v. Jamison*, 262 N.C. 108, 115, 136 S.E.2d 691, 696 (1964). However, when assessing a municipality's actions that are construed to be spot zoning, we note that this Court has set aside the aforementioned presumption in favor of requiring the municipality to offer a "clear showing" that there was a "reasonable basis" for its decision. *See Chrismon*, 322 N.C. at 627, 370 S.E.2d at 589.

GOOD NEIGHBORS OF S. DAVIDSON v. TOWN OF DENTON

[355 N.C. 254 (2002)]

As for the first question of the spot zoning inquiry under *Chrismon,* the circumstances of this case clearly demonstrate that Piedmont's property was spot zoned under the Town of Denton's ordinance. The parcel, a modest fifty acres and wholly company-owned, was transformed from one of the most restrictive zoning classifications under the county ordinance (residential-agricultural) to one of the most expansive under the town's ordinance (forty acres as heavy industrial and ten acres as light industrial). Thus, the zoning process—which involved a small tract of property that was: (1) owned by a single entity, (2) freed of restrictions imposed on neighboring landowners, and (3) surrounded by a uniformly zoned area—qualified as spot zoning. *Id.* at 627, 370 S.E.2d at 589.

Having determined that the zoning activity at issue constitutes spot zoning, the Court must next examine whether the Town of Denton made a clear showing that there was a reasonable basis for its decision. From the outset, we note that the record on appeal is bereft of all reference to the comprehensive zoning plans of either Davidson County or the Town of Denton. *See* N.C.G.S. § 160A-383 (1999) (primary zoning statute establishing that zoning regulations are to be made in accordance with a comprehensive plan that reflects a zoning authority's overall vision for the area under its control). Thus, we are unable to determine whether the disputed zoning action is compatible with any existing comprehensive plan or plans. As a consequence, this factor can lend no support to any contention by the Town of Denton that there is a clear showing of a reasonable basis for its decision.

With regard to the second factor of the reasonable basis test (the "benefits versus detriments" factor), the Court must consider the effects of the zoning change on the owner of the newly owned property, his neighbors, and the surrounding community. While Piedmont and the Town of Denton clearly benefit under the new zoning scheme—the former gets to expand its business operations while the latter arguably gets jobs and an increase to its tax base—we note that the town's benefits are beyond the scope of our inquiry, which is expressly limited to examining the ordinance's beneficial and detrimental effects on the property owner, his neighbors, and the surrounding community. *Chrismon,* 322 N.C. at 628, 370 S.E.2d at 589.

One example of a qualifying benefit is a showing that neighboring property values would increase as a result of the rezoning. Other benefits previously recognized by the Court, as illustrated in *Chrismon,*

include: (1) a showing of broad-based support for the proposed use of the property, and (2) a showing that many of the surrounding landowners were likely to use the expanded services offered by the property owner seeking the zoning change. *Id.* at 630, 370 S.E.2d at 590. A close examination of the record suggests that defendant has failed to demonstrate how the zoning change at issue would so benefit neighbors and the surrounding community. First, among Piedmont's immediate neighbors, there is no broad-based support for the rezoning. In fact, opposition is widespread. Second, defendant makes no case even suggesting that the surrounding community either needs or will make use of the property's planned expanded services. Finally, defendant makes no claim and offers no evidence suggesting that neighboring properties will increase in value as a result of the rezoning. Defendant merely contends that the new use of the property will not spur adverse economic consequences for the property's neighbors. In our view, even if proven, defendant's contention amounts to a showing of nothing more than a lack of a detriment, which falls short of qualifying as a benefit for purposes of spot-zoning analysis.

On the other hand, there is ample evidence showing that the ordinance will result in detrimental consequences for both neighbors of the property and the surrounding community. The record supports the following undisputed material facts:

[ ] The Good Neighbors and its members . . . are and will be directly and adversely affected by the proposed chemical plant or by any other . . . heavy industrial use of the property allowed by the Town's zoning ordinance. There is a strong potential for noxious odors fouling the air; noise; spills and leaks of chemicals into drinking water wells; increased truck traffic with hazardous chemicals passing by their homes, schools and water supply watershed; the loss of the use and enjoyment of their property; the loss of property values; and interference with their health, safety and general welfare.

. . . .

[ ] The property was rezoned without any consideration of: (a) the lack of any changing conditions in the area; (b) the surrounding active farms and other agricultural uses; (c) the effects of the chemical plant on the greater than the 295 people living within a mile of the plant; (d) the school located within a two-mile radius [of the plant]; (e) the lack of fire and emergency

services if a spill occurred on the roads or railroads; (f) the approximate five-mile distance to [the] nearest major industry; (g) the location of the west branch of Lick Creek; (h) the need for protection to adjoining property; (i) the effects of the chemical plant on property values; and (j) general health, safety and general welfare.

In addition, we note another adverse consequence that is peculiar to the circumstances of this case. As a result of the satellite annexation that paved the way for the Town of Denton to rezone the Piedmont property, complaining neighbors were left with but one recourse—the state's courts. Although their respective properties surrounded the property at issue, neighboring landowners found themselves without representation in their fight against the zoning change. As residents of a rural section of Davidson County, they had been initially represented by the county's board of commissioners when it twice rejected the zoning change, ostensibly because the board had determined that the proposal was not in the community's best interests. However, in the aftermath of the satellite annexation, when the authority to rezone the parcel shifted from the county to the Town of Denton, Piedmont's neighbors suddenly found themselves outside looking in. Without a say in the annexation process, they had no one to defend their zoning interests and no one to vote out of office for failing to do so. In sum, the Town of Denton could act on the property at issue without fear of political reprisal from the neighboring landowners of Davidson County. From our vantage point, there are precious few circumstances that could prove more detrimental to a surrounding community. Thus, in weighing the lack of evidence showing potential benefits against strong evidence suggesting numerous and significant detriments to neighbors and the surrounding community, we conclude that the "benefits and detriments" factor fails to aid defendant's attempt to provide a clear showing of a reasonable basis for the rezoning.

As for the final factor of the reasonable basis test—evaluating the relationship between the uses envisioned under the new zoning and the uses currently present in adjacent tracts—the Court initially notes that the trial court found that the rural character of the surrounding community showed no signs of changing conditions. We also recognize that Piedmont's use of the property at issue was not in sync with the surrounding community for nearly a decade *before* the Town of Denton's attempt at rezoning. Although exempted from zoning restrictions imposed by the county in 1990, and thus operating

within legal parameters, Piedmont developed and maintained a chemical storage facility on the parcel in an area that was: (1) specifically zoned for farms and residences, and (2) actually composed of such farms and rural residences. Thus, if Piedmont's use of the tract clashed with the property uses of its immediate neighbors prior to the zoning change, can there be any doubt that an expansion of its industrial capacities amid a static agricultural community would serve only to exacerbate the dichotomy even further?

In summary then, of all the individual factors deemed relevant to a spot-zoning inquiry under *Chrismon*, none provide defendant with the required clear showing of a reasonable basis for its actions. In fact, when considered collectively, the factors are rather suggestive of a cavalier unreasonableness on the part of the town. Specifically, there is no evidence demonstrating compatibility between the rezoning and an existing comprehensive plan; no evidence showing that the town's zoning authority considered the relationship between the envisioned uses of the property and the uses present in the adjacent tracts; no evidence of benefits beyond those to Piedmont and the Town of Denton; and strong, uncontested evidence of potential detriments to both immediate neighbors and the surrounding community as a whole. Thus, while we agree with the Court of Appeals' conclusion that the action at issue constituted a form of spot zoning, we do not share its view that the activity was of the legal variety. As a result, we reverse the Court of Appeals on this issue and order that court to reinstate the trial court's grant of summary judgment in favor of plaintiffs, Good Neighbors.

Because our holding on the spot-zoning issue resolves the dispute between these two parties *in toto*, we find it unnecessary to address plaintiffs' additional contentions pertaining to contract zoning and proper scope of review.

REVERSED.