MAXTON McDOWELL, WANDA H. McDOWELL, CLAUDE WINSLOW, AND BARBARA WINSLOW, PLAINTIFFS v. RANDOLPH COUNTY AND McDOWELL LUMBER COMPANY, INC., DEFENDANTS

No. COA06-1533

(Filed 18 September 2007)

**1. Laches— rezoning—defense raised by county—no injury shown**

The trial court did not err by refusing to grant summary judgment for defendant county on the defense of laches in an action which sought to invalidate a rezoning. Although the company which sought the rezoning invested substantial sums in reliance on defendant's actions, the evidence does not demonstrate that defendant itself sustained any injury.

**2. Zoning— illegal spot zoning—lumberyard**

The trial court did not err by concluding that a rezoning to permit a lumberyard, a saw-mill, and related operations was illegal spot zoning, considering the size of the tract; the existing comprehensive zoning plan; the benefit and detriment to the owner, the neighbors, and the community; and the relationship of the proposed uses to current uses.

McDOWELL v. RANDOLPH CTY.

[186 N.C. App. 17 (2007)]

### 3. Mandamus— to enforce zoning plan—third party injury— mandamus not appropriate

The trial court did not err by denying plaintiff's request for a writ of mandamus to enforce the zoning plan in place before an illegal spot zoning. Mandamus is not appropriate when it injuriously affects the rights of those not parties to the action; the landowner here had been dismissed from the action and would be injuriously affected by the mandamus.

Appeal by plaintiffs and cross-appeal by defendants from order entered 28 September 2006 by Judge Charles C. Lamm in Randolph County Superior Court. Heard in the Court of Appeals 6 June 2007.

*The Brough Law Firm, by Robert E. Hornik, Jr., for plaintiff-appellants/cross-appellees.*

*Gavin Cox Pugh and Wilhoit LLP, by Alan V. Pugh and Darren C. Allen, for defendant-appellees/cross-appellants.*

JACKSON, Judge.

Maxton and Wanda McDowell ("the McDowells") and Claude and Barbara Winslow ("the Winslows") (collectively, "plaintiffs") brought an action against Randolph County ("defendant") and McDowell Lumber Company, Inc. ("MLC"), requesting that the trial court, *inter alia*, (1) invalidate defendant's rezoning of a portion of MLC's property; (2) enjoin certain operations at the MLC property; and (3) issue *mandamus* ordering defendant to enforce its zoning ordinance against the MLC property. The trial court granted summary judgment for plaintiff in part and for defendant in part. For the following reasons, we affirm.

The McDowells own a home located adjacent to MLC's property in Randolph County, and the Winslows own a home located adjacent to and east of MLC's property. Defendant has in effect a Unified Development Ordinance ("UDO"), adopted on 6 July 1987. According to the UDO, a portion of MLC's property lies in a Light Industrial zoning district ("LI"), and the balance of the property is zoned Residential Agricultural ("RA"). The surrounding areas, including plaintiffs' properties, all are zoned RA. Pursuant to the UDO, permanent·sawmills and planing mills are prohibited in both the RA and LI zoning districts. MLC has on its property a lumber yard, a permanent saw mill, a pallet-making operation, and other related milling opera-

McDOWELL v. RANDOLPH CTY.

[186 N.C. App. 17 (2007)]

tions. A portion of MLC's operation existed prior to the adoption of the UDO in 1987.

On 4 February 2002, defendant adopted the Randolph County Growth Management Plan ("GMP"), in which it designated the tract at issue as "Rural Growth." Between March 2000 and December 2004, MLC routinely sought and obtained building permits from defendant, notwithstanding continued zoning as LI and RA. During this time, MLC expanded its operations further into the portion of its property zoned RA, and in late 2004, MLC erected an 800 square foot kiln building and an 8,000 square foot addition to an existing building within twenty feet of the Winslows' property.

Plaintiffs allege that MLC's operation results in noise pollution, air pollution resulting from sawdust and fumes, and increased truck traffic, all of which cause injury to the value of their properties and diminution in their ability to use and enjoy their properties. Defendant alleges that MLC is in compliance with all applicable state regulations with respect to air pollution, water contamination, and vehicular traffic issues. Defendant also notes that the UDO specifically recognizes uses in place at the time of the initial adoption as lawful either by zoning classification or as non-conforming uses. Further, defendant argues that at the time of the adoption of the UDO in 1987, MLC's property mistakenly was designated LI and RA when it should have been designated Heavy Industrial ("HI"). Defendant has treated the property as if it had been properly zoned or as if MLC's operations constituted valid, pre-existing, non-conforming uses under the UDO.

On 18 November 2004, MLC applied to defendant to change the zoning classification of its property from LI and RA to Heavy Industrial/Conditional Use ("HI-CU"). On 7 February 2005, the application was brought for review at a public hearing, during which plaintiffs and their family members voiced their objections to the rezoning, citing inconsistencies between the use of the property and the UDO and the GMP. On 2 May 2005, the Randolph County Board of Commissioners approved MLC's rezoning application. Plaintiffs contested the decision, alleging that they have been damaged by defendant's failure to enforce the UDO and that defendant engaged in illegal spot zoning by rezoning MLC's property.

On 25 May 2005, plaintiffs filed an amended complaint and petition for writ of *mandamus*. On 18 September 2006, the trial court held a hearing on cross-motions for summary judgment, and plaintiffs

thereafter voluntarily dismissed MLC from their lawsuit. On 28 September 2006, the trial court entered an order granting plaintiffs' motion for summary judgment in part, declaring that defendant's rezoning decision on 2 May 2005 constituted illegal spot zoning and, therefore, was null and void. The trial court, however, denied plaintiffs' request that defendant be required to enforce the UDO against MLC and thereby limit the use of MLC's property to operations as they existed on 6 July 1987. Plaintiffs and defendant both filed timely notice of appeal.

On appeal, plaintiffs contend that the trial court (1) properly declared the rezoning of MLC's property null and void;[1] and (2) erred in denying plaintiffs' petition for writ of *mandamus*. On cross-appeal, defendant contends that the trial court erred (1) in not granting summary judgment for defendant pursuant to the doctrine of laches; and (2) in concluding that defendant's action constituted illegal spot zoning.

The standard of review from an order allowing summary judgment is well-established: "We review a trial court's order for summary judgment de novo to determine whether there is a 'genuine issue of material fact' and whether either party is 'entitled to judgment as a matter of law.'" *Robins v. Town of Hillsborough*, 361 N.C. 193, 196, 639 S.E.2d 421, 423 (2007) (quoting *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003)). Here, since the parties stipulated before the trial court that there existed no disputed issue of material fact, "[w]e need only determine whether summary judgment was properly entered in plaintiffs' favor, or conversely should have been entered in favor of defendant." *Geitner v. Mullins*, 182 N.C. App. 585, 589, 643 S.E.2d 435, 438 (2007).

**[1]** In its first cross-assignment of error, defendant contends that the trial court erred in not granting summary judgment for defendant pursuant to the doctrine of laches. We disagree.

"[L]aches is an affirmative defense. It must be pleaded and the burden of proof is on the party who pleads it." *Taylor v. City of Raleigh*, 290 N.C. 608, 622, 227 S.E.2d 576, 584 (1976). In the instant case, defendant specifically and affirmatively pled the doctrine of laches. The trial court, however, failed "to make any finding, reach any conclusion or otherwise rule on the[] plea." *Stutts v. Swaim*, 30

---

1. Although plaintiffs raised this issue in their brief as appellants, plaintiffs properly should have addressed this issue in their brief as appellees, since it was defendant who assigned error to this issue.

N.C. App. 611, 615, 228 S.E.2d 750, 753, *disc. rev. denied,* 291 N.C. 178, 229 S.E.2d 692 (1976). Therefore, we must determine "whether the evidence was sufficient to establish a prima facie showing of laches and to require a finding and conclusion by the court." *Id.*

"In equity, where lapse of time has resulted in some change in the condition of the property or in the relations of the parties which would make it unjust to permit the prosecution of the claim, the doctrine of laches will be applied." *Teachey v. Gurley,* 214 N.C. 288, 294, 199 S.E. 83, 88 (1938). As our Supreme Court later clarified, "the mere passage or lapse of time is insufficient to support a finding of laches; for the doctrine of laches to be sustained, the delay must be shown to be unreasonable and *must have worked to the disadvantage, injury or prejudice of the person seeking to invoke it.*" *Taylor,* 290 N.C. at 622-23, 227 S.E.2d 584-85 (emphasis added) (internal quotation marks and citation omitted).

In the case *sub judice,* regardless of the passage of time, defendant, as the party seeking to invoke the defense of laches, has not demonstrated prejudice resulting from any alleged delay in plaintiffs' initiating this action. Although the record indicates that MLC has invested substantial sums of money in reliance on defendant's actions, defendant has failed to argue and the evidence fails to demonstrate that defendant itself has sustained any injury. Accordingly, defendant's cross-assignment of error is overruled.

[2] In its second cross-assignment of error, defendant contends that the trial court erred in concluding that its zoning action with respect to MLC's property constituted illegal spot zoning. We disagree.

"Zoning, as a definitional matter, is the regulation by a local governmental entity of the use of land within a given community, and of the buildings and structures which may be located thereon." *Chrismon v. Guilford County,* 322 N.C. 611, 617, 370 S.E.2d 579, 583 (1988). "[A]s a general proposition, a municipality's zoning actions are presumed to be reasonable and valid." *Good Neighbors of S. Davidson v. Town of Denton,* 355 N.C. 254, 258 n.2, 559 S.E.2d 768, 771 (2002). This presumption, however, is set aside when a municipality's actions constitute spot zoning. *See id.* Spot zoning has been defined as a zoning action that "singles out and reclassifies a relatively small tract owned by a single person and surrounded by a much larger area uniformly zoned, so as to . . . relieve the small tract from restrictions to which the rest of the area is subjected." *Blades v. City of Raleigh,* 280 N.C. 531, 549, 187 S.E.2d 35, 45 (1972). "[I]n any spot

zoning case in North Carolina courts, two questions must be addressed by the finder of fact: (1) did the zoning activity in the case constitute spot zoning as our courts have defined that term; and (2) if so, did the zoning authority make a clear showing of a reasonable basis for the zoning." *Chrismon*, 322 N.C. at 627, 370 S.E.2d at 589.

In the case *sub judice*, defendant does not dispute that the rezoning constituted spot zoning, and therefore, this issue is not before us. *See* N.C. R. App. P. 10(a), 28(b)(6) (2006). The dispute, instead, centers on the validity of the spot zoning, with the trial court's concluding that "[t]here is no clear showing of a reasonable basis for this rezoning. The undisputed evidence is that there is no accompanying benefit to the plaintiffs and no benefit to the surrounding community or to the public interest." On appeal, defendant contends "that the action of Randolph County was permissible, valid, and lawful spot zoning." We disagree.

"[A] judicial determination as to the existence or nonexistence of a sufficient reasonable basis in the context of spot zoning is, and must be, the product of a complex of factors." *Chrismon*, 322 N.C. at 628, 370 S.E.2d at 589 (internal quotation marks and citation omitted).

The North Carolina Supreme Court has enumerated several factors that are relevant to a showing of the existence of a sufficient reasonable basis for spot zoning.

1. The size of the tract in question.

2. The compatibility of the disputed action with an existing comprehensive zoning plan.

3. The benefits and detriments for the owner, his neighbors and the surrounding community.

4. The relationship of the uses envisioned under the new zoning and the uses currently present in adjacent tracts.

*Covington v. Town of Apex*, 108 N.C. App. 231, 238, 423 S.E.2d 537, 541 (1992) (citing *Chrismon*, 322 N.C. at 628, 370 S.E.2d at 389), *disc. rev. denied*, 333 N.C. 462, 427 S.E.2d 620 (1993).

"The first factor is the size of the tract in question." *Id.* Although the size of the property is not dispositive, our Courts have found illegal spot zoning present in cases in which the tract of land at issue ranged from 0.58 acres, *see Mahaffey v. Forsyth County*, 99 N.C. App. 676, 394 S.E.2d 203, *aff'd*, 328 N.C. 323, 401 S.E.2d 365 (1991) (per

curiam), to fifty acres. *See Good Neighbors*, 355 N.C. 254, 559 S.E.2d 768. Here, the tract of land, which amounted to 29.95 acres, falls squarely within that range. Defendant approved MLC's application to rezone a 29.95-acre portion of its 120.30-acre property from the LI and RA districts to the HI-CU district. The remaining 90.35 acres, or approximately seventy-five percent, of MLC's property remains zoned LI or RA; the land surrounding MLC's property, which plaintiff Maxton McDowell estimated as comprising thousands of acres and which includes plaintiffs' property, remains uniformly zoned RA.

"The second factor is the compatibility of the disputed action with an existing comprehensive zoning plan. 'Zoning generally must be accomplished in accordance with a comprehensive plan in order to promote the general welfare and serve the purpose of the enabling statute.' " *Covington*, 108 N.C. App. at 238, 423 S.E.2d at 541 (quoting *Alderman v. Chatham County*, 89 N.C. App. 610, 615-16, 366 S.E.2d 885, 889, *disc. rev. denied*, 323 N.C. 171, 373 S.E.2d 103 (1988)). Pursuant to North Carolina General Statutes, section 153A-341, "[z]oning regulations shall be made in accordance with a comprehensive plan" and "shall be designed to promote the public health, safety, and general welfare." N.C. Gen. Stat. § 153A-341 (2005).

In the instant case, defendant adopted the UDO on 6 July 1987 and the GMP on 4 February 2002. Through both the UDO and the GMP, defendant's comprehensive zoning plan has included the goal of separating incompatible land uses and ensuring that such uses are not placed immediately adjacent to one another. According to the UDO, the purpose of the RA district

is to provide a place for agricultural operations; forestry; scattered non-farm residences on traditional rural lots while preserving rural open space and natural heritage assets. To maintain rural character[,] only minor conventional residential subdivisions are allowed in this District.

The HI-CU district, to which defendant rezoned a portion of MLC's property, encompasses the same regulations as the HI district and "is designed to accommodate those industries whose normal operations include dust, noise; odor, or other emissions which may be deemed objectionable." Similarly, the GMP expressly provides that "[i]ndustrial development should not be located in areas that would diminish the desirability of existing and planned residential uses." The tract at issue in the instant case is located within an area in the GMP characterized as a "Rural Growth Area," which is comprised of predomi-

nantly agricultural and rural residential development. The GMP notes as a "Development Consideration[]" that "[c]onflict among incompatible land uses can be extreme" in a rural growth area. Therefore, as a "Development Polic[y]," the GMP "[r]equire[s] dedicated open space as a buffer between incompatible land uses."

Here, the tract that defendant rezoned as HI-CU is surrounded by land uniformly zoned RA and is immediately adjacent to property developed for residential uses. As a result, plaintiffs' properties, along with other properties zoned RA, have experienced some of the problems that the UDO and the GMP exist to prevent. Specifically, during the rezoning public hearing on 7 February 2005, residents noted increased and sustained noise, increased odor pollution, increased sawdust emission, heightened traffic and safety concerns, and the likelihood of diminished property values. These problems have been exacerbated by the fact that no substantial buffer between the HI-CU land and plaintiffs' land has been established, even though the GMP requires such a buffer between heavy industrial sites and residential areas.

Although some of MLC's operations existed prior to the adoption of the UDO and the GMP, the record reflects that MLC's application for rezoning coincided with an expansion of its operations in late 2004—namely, MLC added a pallet-making operation, located directly adjacent to the Winslows' property. In late 2004, defendant issued building permits and zoning permits for new structures on MLC's property, including an 800 square foot kiln building and an 8,000 square foot addition to an existing building within twenty feet of the Winslows' property. The UDO, however, provides that "it is the intent of this ordinance to permit these non-conformance[s] to continue until they are removed . . ., but not to encourage their continuance."

By approving MLC's rezoning application, defendant acted "in direct contravention of its comprehensive zoning plan." *Covington*, 108 N.C. App. at 239, 423 S.E.2d at 541; *see also Good Neighbors*, 355 N.C. at 262, 559 S.E.2d at 774 (finding "no evidence demonstrating compatibility between the rezoning and an existing comprehensive plan").

"The third relevant factor is the benefits and detriments to the owner, his neighbors and the surrounding community." *Covington*, 108 N.C. App. at 239, 423 S.E.2d at 542. As our Supreme Court stated in *Chrismon*, "[t]he standard is not the advantage or detriment to particular neighboring landowners, but rather *the effect upon the entire*

*community as a social, economic and political unit." Chrismon,*
322 N.C. at 629, 370 S.E.2d at 590 (emphasis added) (internal quota-
tion marks and citation omitted).

Here, defendant asserts that permitting "the continued operation
of McDowell Lumber Company after 31 years . . ., with its investment
and payroll exceeding 100 employees is in the public interest by
increasing 'economic activity, job creation, and the tax base of
Randolph County.'" However, defendant presented no evidence of
such benefits to the planning board, and there is no evidence in the
record to support defendant's assertion. *See Good Neighbors*, 355
N.C. at 258, 559 S.E.2d at 771 ("A zoning authority cannot satisfy the
'clear showing of a reasonable basis' requirement simply by catalogu-
ing the many benefits it received as a result of the zoning change.").

Defendant also contends that "the restrictive conditions, enforce-
able by the County, attached to the conditional use rezoning which
were nonexistent before, . . . inure to the sole benefit of the two adja-
cent landowners." Those conditions include: (1) obtaining clearance
from the cable company before digging near a cable right-of-way;
(2) not constructing buildings north of any existing structure facing
Old N.C. Highway 49; (3) maintaining three rows of trees fronting
Old N.C. Highway 49, three rows along MLC's eastern property line,
one row along the southeastern property line, and one row along
the western property line; (4) relocating certain existing fans; (5)
enclosing one wall of the pallet building with an insulated roof to
reduce noise; (6) revamping the breathing and inspection portion of
the sawdust waste bin to reduce dust; (7) reducing the number of out-
side lights by approximately one-half, contingent upon employee
security; (8) establishing a schedule for truck traffic; (9) continuing
to comply with provisions of the Occupational Safety and Health Act
("OSHA") with respect to safety, noise, and air quality; and (10) con-
tinuing to comply with state and federal regulations with respect to
stormwater run-off.

First, those opposing the rezoning application were not con-
cerned with stormwater run-off, cable right-of-ways, or outside light-
ing.[2] Additionally, MLC had a pre-existing, ongoing duty to comply
with state and federal laws. Furthermore, although defendants

2. Although defendant's planning director stated during the 7 February 2005 hear-
ing that these conditions were offered in response to issues raised by plaintiff Maxton
McDowell at a planning board hearing in December 2004, the record fails to contain a
transcript from that hearing, and, therefore, this Court is unable to determine what pre-
cise issues were raised in December 2004.

drafted the conditions to include specific numbers of trees for different areas along the property line, the trees were to alleviate alleged concerns about "visual aesthetics." There is no evidence in the record, however, from which this Court can determine how significant a buffer area the trees would create between plaintiffs' properties and the MLC property, particularly considering that the trees previously acting as a buffer had been removed and that the proposed evergreens would take years to mature. Next, MLC promised to relocate certain fans on the exterior of the pallet building and to enclose one exterior wall, stating, "This is gonna [sic] help reduce noise." The record, however, fails to demonstrate what effect these alterations would have on the noise levels. Finally, defendant promised to enclose "[t]he open breathing inspection hole at the top of the sawdust waste bin" and to install a new sheet metal pipe to channel sawdust, but the record does not include specific information with respect to projected dust reduction. Ultimately, the record fails to detail the precise effect that the conditions MLC agreed to impose upon its property would have "upon the entire community as a social, economic, and political unit." *Chrismon*, 322 N.C. at 629, 370 S.E.2d at 590 (internal quotation marks and citation omitted), and plaintiffs contended at the hearing that "there are [no] . . . conditions whatsoever that can cure that situation."

"On the other hand, there is ample evidence showing that the [rezoning action] will result in detrimental consequences for both neighbors of the property and the surrounding community." *Good Neighbors*, 355 N.C. at 260, 359 S.E.2d at 773. This is demonstrated first by the fact that several people spoke in opposition to MLC's rezoning application at the public hearing. In addition to plaintiffs' attorney, plaintiff Maxton McDowell, plaintiff Barbara Winslow, and plaintiff Claude Winslow, the Winslow's daughter, plaintiff Claude Winslow's brother, Marian Mueller ("Mueller"), and Gaynelle Vionni ("Vionni") also opposed the rezoning. *Compare Chrismon*, 322 N.C. at 630, 370 S.E.2d at 590 ("While this Court understands that it was the Chrismons alone who lived next door to the operation, we do note that it was the Chrismons, *and no one else*, who spoke up against the rezoning." (emphasis in original)).

Among the detrimental consequences for the community is the increased truck traffic. As plaintiffs' attorney explained, "[t]here are many safety issues here to deal with: truck traffic, truck parking, truck issues as they go along, forklifts going in and out," particularly in light of the age and size of the main highway. Accordingly to plaintiff Claude Winslow,

on January the 12th I took eight hours from eight o'clock in the morning till four o'clock in the afternoon and counted trucks. . . . I sat there and counted trucks all day going in and out of that sawmill. . . . You know how many there were? 156.

Later in the hearing, Mueller stated, "When we first started coming here, there was [sic] no logging trucks. . . . [N]ow it takes me 10 to 15 minutes to get to town, and I will pass one to two trucks every single time on that little road . . . ." Finally, we note, as we did in *Budd v. Davie County*, 116 N.C. App. 168, 176, 447 S.E.2d 449, 454 (1994), that "[a]ll of the area surrounding the rezoned land and the area surrounding the routes the trucks . . . would drive are residential and agricultural areas. There is no industry in the area . . . ."

Plaintiffs also presented evidence supporting their contention that MLC's operations resulted in increased noise and dust that impacted their ability to enjoy their property. The Winslows' daughter, Kim Huffman ("Huffman"), presented video evidence demonstrating the steady, loud noise generated by operations on MLC's property. Huffman's video also depicted how the sawdust produced by MLC covers vehicles owned by neighborhood residents. The noise and air pollution issues also were reflected in a letter written by Vionni, the tenant living at the Winslows' rental property:

Unfortunately, I will have to move as soon as possible due to pollution from the mill next door.

. . . .

I was aware of the mill when I moved here. At that that [sic] there was a buffer zone of trees between the house and the mill. Although the noise could be heard, it was tolerable. Although the mill was partially visible, the trees effectively blocked most of it, and the trees also served as [a] buffer for the dust—dust particles. Since the trees have been removed, the noise is extremely intrusive. At times I am unable to hear the television and I have had problems with people calling me on the telephone and asking me, "What is that noise?"

. . . Dust particles continue to cover my car and I'm sure my respiratory system as well, creating a significant health risk.

The only thing visible from my kitchen and bedroom windows is the mill, an extremely unattractive view. I am a very patient and tolerable—tolerant person. I had hoped to live here

for many years. It is my opinion that Mr. and Mrs. Winslow will not be able to rent this property at all under these conditions.

Based upon the foregoing evidence, "[w]e agree that the detriment to the community outweighs any alleged benefit." *Mahaffey*, 99 N.C. App. at 684, 394 S.E.2d at 208.

The final *Chrismon* factor is "the compatibility of the uses envisioned in the rezoned tract with the uses already present in adjacent tracts." *Covington*, 108 N.C. App. at 240, 423 S.E.2d at 542. As our Supreme Court noted, "rezoning of a parcel in an old and well-established residential district to a commercial or industrial district would clearly be objectionable." *Chrismon*, 322 N.C. at 631, 370 S.E.2d at 391. Here, the evidence demonstrates that the heavy industrial operations on MLC's property are incompatible with the adjacent residential tracts as a result of, *inter alia*, the noise, air pollution, and truck traffic.

Based upon the foregoing analysis, we hold "that the rezoning was an illegal spot zoning and was, therefore, 'in excess of the authority' of the Board of Commissioners and invalid." *Budd*, 116 N.C. App. at 178, 447 S.E.2d at 455 (quoting *Blades*, 280 N.C. at 551, 187 S.E.2d at 46). The trial court, therefore, correctly granted summary judgment to plaintiffs and denied summary judgment to defendant on this ground.

**[3]** Finally, plaintiffs contend that the trial court erred in denying their request for *mandamus*, in which they requested that the trial court order defendant to enforce the UDO as to MLC's property as it existed when the UDO was adopted.[3] We disagree.

"The writ of *mandamus* is an ancient and carefully circumscribed extraordinary remedy." *Lloyd v. Babb*, 296 N.C. 416, 452, 251 S.E.2d 843, 866 (1979). As our Supreme Court has explained,

> *mandamus* will lie to compel the performance of a purely ministerial duty imposed by law, and that the party seeking the writ

---

3. When a zoning action is invalidated on the basis of illegal spot zoning, "[t]he zoning classification of the property at issue reverts to the last legal classification" of the property as defined by the applicable zoning ordinance. *Budd*, 116 N.C. App. at 178, 447 S.E.2d at 455 (citing *Mahaffey*, 99 N.C. App. at 684, 394 S.E.2d at 208). Therefore, in the case *sub judice*, the zoning classification for the property at issue necessarily reverts to its classification prior to the illegal rezoning. *See id.* However, MLC's operations on the property prior to the rezoning application constituted a legal non-conforming use, and therefore, plaintiffs petitioned for *mandamus* to have the UDO enforced against the property as it existed in 1987.

must have a clear legal right to demand it, and the party sought to be coerced must be under legal obligation to perform the duty. "[The function of the writ] is to compel the performance of a ministerial duty—not to establish a legal right, but to enforce one which has been established."

*Hinshaw v. McIver*, 244 N.C. 256, 259, 93 S.E.2d 90, 92 (1956) (alteration added) (quoting *St. George v. Hanson*, 239 N.C. 259, 263, 78 S.E.2d 885, 888 (1954)). Our Court has noted that *mandamus* may be appropriate when, as in the instant case, a party seeks to compel the enforcement of a zoning ordinance. *See, e.g., Midgette v. Pate*, 94 N.C. App. 498, 505, 380 S.E.2d 572, 576 (1989). However, *mandamus* is not appropriate and "the writ will not issue . . . where the rights of those not parties to the action would be injuriously affected." *Hinshaw*, 244 N.C. at 259, 93 S.E.2d at 92; *accord Britt v. Bd. of Canvassers*, 172 N.C. 797, 805, 90 S.E. 1005, 1008 (1916).

Here, enforcement of the zoning ordinance would directly and detrimentally impact MLC's ability to continue its current use of the property in question. Therefore, MLC's rights would be injuriously affected by the granting of *mandamus*. Although MLC initially was a defendant in the case, the trial court noted that during the hearing on the cross motions for summary judgment, "[p]laintiffs announced to the court that they were taking a voluntary dismissal as to [MLC]." The basis for the dismissal is not evident from the record on appeal. On 19 September 2006, plaintiffs signed—and later submitted to the trial court—the "Notice of Voluntary Dismissal of Claims as Against Defendant McDowell Lumber Company, Inc." Thereafter, on 28 September 2006, the trial court entered its order on the cross motions between plaintiffs and defendant.

The trial court properly denied plaintiffs' request that *mandamus* be issued to compel defendant "to 'roll back' the enforcement of the zoning ordinance as to this property as it existed in 1987." Although the trial court based its decision upon defendant's good faith issuance of building permits to MLC and MLC's good faith reliance upon those permits, it is well-settled that " '[i]f the correct result has been reached, the judgment will not be disturbed even though the trial court may not have assigned the correct reason for the judgment entered.' " *Wells v. N.C. Dep't of Corr.*, 152 N.C. App. 307, 321, 567 S.E.2d 803, 813-14 (2002) (quoting *Shore v. Brown*, 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989)). The trial court did not err in refusing to

CHILDRESS v. YADKIN CTY.

[186 N.C. App. 30 (2007)]

issue the extraordinary writ of *mandamus*, and accordingly, plaintiffs' assignment of error is overruled.

Affirmed.

Judges CALABRIA and GEER concur.