DELBERT CHRIS CHILDRESS, NORMA M. DAVIS, STEVE G. DAVIS, EDDIE ALLEN BRYANT, EUNICE B. MACEMORE, L. HERMAN BURCHAM, RUTH K. BURCHAM, DELMER SIMMONS, RONALD CHILDRESS, KENNETH VESTAL, AND PAUL BROWN, PLAINTIFFS v. YADKIN COUNTY; LEON CASSTEVENS, KIM CLARK PHILLIPS, ALLEN SNEED, D.C. SWAIM AND BRADY WOOTEN, MEMBERS OF THE BOARD OF COMMISSIONERS OF YADKIN COUNTY, JERRY L. BRYANT, DEFENDANTS

No. COA06-1467

(Filed 18 September 2007)

**1. Zoning— spot zoning—reasonable basis—change from rural agriculture to restricted residential**

The rezoning of fifty-one acres of defendant Bryant's property from rural agriculture to restricted residential was not illegal spot zoning, because: (1) although defendant's property meets the first two elements of spot zoning including that it is a small tract and it is surrounded by a larger uniformly zoned property, it does not meet the third element since the property has not been relieved from restrictions on lot size to which the rest of the area is subject, and single family homes are allowed in both zoning districts; (2) even if the board of commissioners engaged in spot zoning, it had a reasonable basis to do so based on the county's existing comprehensive plan to allow the development of residential subdivisions that are compatible to the rural parts of the county; (3) under existing zoning regulations, defendant could place manufactured homes on the property which would have the same effect on the surrounding tracts in terms of population density, water, and sewer concerns; (4) the restricted residential zoning classification will provide consistency in the development of the subdivision, and the community will benefit since the growth of the area will be regulated; (5) an increased number of people encourages more people to enter the county, which in turn creates more employment opportunities for the county's residents;

(6) both zoning districts have the same minimum lot size of 30,000 square feet; and (7) the property is not being rezoned for a commercial or industrial purpose, but will maintain its status as a residential area.

## 2. Zoning— contract zoning—failure to show contract or bilateral obligation

The trial court did not err in a declaratory judgment action by granting summary judgment in favor of defendants on the issue of contract zoning, because: (1) plaintiffs concede they did not present direct evidence of a specific bargain between defendant board of commissioners and defendant landowner for the use of the rezoned property; and (2) plaintiffs have failed to produce any evidence of a contract or bilateral obligation between defendants.

## 3. Zoning— factual findings—reasonableness of rezoning

The trial court did not err in a declaratory judgment action by granting summary judgment in favor of defendants even though plaintiffs contend the zoning boards have an absolute obligation to make appropriate factual findings which clearly demonstrate the reasonableness of the rezoning determination, because: (1) contrary to plaintiffs' assertion, *Good Neighbors*, 355 N.C. 254 (2002), does not create an absolute obligation to make factual findings; (2) the minutes from the board meeting establish that the board considered the impact of rezoning defendant's property on the surrounding tract; (3) although a zoning board acting in a quasi-judicial capacity is required to make findings of fact, a rezoning decision is a legislative act; (4) although plaintiffs argue the trial court erred by not making findings as to whether the board adequately considered the relevant *Chrismon* factors, it is not a part of the function of the trial court to make findings of fact and conclusions of law on a motion for summary judgment; and (5) although plaintiffs contend it is highly significant that they prevailed on their motion for preliminary injunction, findings and conclusions made in the grant of an injunction are not authoritative as the law of the case for any other purpose, and the judgment or order is not res judicata on final hearings.

Appeal by plaintiffs from an order entered 28 June 2006 by Judge Catherine C. Eagles in Yadkin County Superior Court. Heard in the Court of Appeals 23 May 2007.

**CHILDRESS v. YADKIN CTY.**

[186 N.C. App. 30 (2007)]

*Randolph and Fischer, by J. Clark Fischer; Melvin and Powell, by Edward L. Powell, for plaintiff-appellants.*

*Benjamin H. Harding, Jr., PLLC, by Benjamin H. Harding, Jr., for defendant-appellees Yadkin County, Leon Casstevens, Kim Clark Phillips, Allen Sneed, D.C. Swain, and Brady Wooten, Members of the Board of Commissioners of Yadkin County.*

*Vannoy, Colvard, Triplett & Vannoy, P.L.L.C., by Daniel S. Johnson, for defendant-appellee Jerry L. Bryant.*

HUNTER, Judge.

Delbert Chris Childress, Norma M. Davis, Steve G. Davis, Eddie Allen Bryant, Eunice B. Macemore, L. Herman Burcham, Ruth K. Burcham, Delmer Simmons, Ronald Childress, Kenneth Vestal, and Paul Brown ("plaintiffs") appeal the trial court's entry of summary judgment in favor of Jerry Bryant ("Bryant") and Yadkin County ("the County").[1] This case involves the question of whether Yadkin County properly re-zoned Bryant's property from rural agriculture to restricted residential. After careful consideration, we affirm.

On 29 December 2004, Bryant filed a petition to re-zone approximately fifty-one (51) acres of real property in Boonville Township, Yadkin County, from a zoning classification of rural agricultural to restricted residential. On 10 January 2005, the Yadkin County Planning Board met to consider Bryant's petition to re-zone the subject property and recommended that the petition be denied.

After this hearing, notice of public hearing on this petition was published in the Yadkin Ripple newspaper and signage was posted on the property. On 21 February 2005, the Yadkin County Board of Commissioners ("the Board") held a public hearing to take comments on Bryant's petition for re-zoning. The Board granted Bryant's re-zoning request by a three to two (3-2) vote.

On 24 March 2005, plaintiffs filed a complaint against defendants seeking a declaratory judgment that the amendment to the Yadkin County Zoning Ordinance approved by the Board constituted illegal spot zoning and/or illegal contract zoning. Yadkin County and individual members of the Board filed an answer denying the essential allegation of the complaint, and Bryant's answer denied any impropriety in the amendment and counterclaimed on the grounds

---

1. Bryant and the County are also referred to as "defendants" in this opinion.

that plaintiffs' complaint was wrongfully filed for the purpose of harassment.

On 19 April 2005, the trial court granted plaintiffs' motion for preliminary injunction and entered an order prohibiting Yadkin County and the Board from reclassifying the property and Bryant from using the property in a manner inconsistent with the rural agriculture designation. Defendants and plaintiffs then moved for summary judgment. The trial court granted defendants' motion for summary judgment and denied plaintiffs' summary judgment motion.

In support of their motion for summary judgment, Yadkin County and the Board submitted the affidavit of County Manager Cecil Wood ("Wood"). According to Wood, the minutes of the Board's meeting showed that "nine (9) people spoke in favor of the re-zoning petition, four (4) people spoke in opposition to the re-zoning petition and six (6) people spoke without directly indicating" their position on the issue. The Board then considered the Yadkin County Planning Board's recommendation that Bryant's petition be denied and requested that the Planning Board gather additional information regarding Bryant's petition to re-zone.

The Planning Board again recommended that Bryant's petition be denied. On 9 March 2005, the Board then held another hearing regarding Bryant's petition. Wood stated that at this meeting, "one (1) person spoke in favor of the re-zoning petition and three (3) people spoke in opposition to the re-zoning petition." The Board then voted in favor of the re-zoning.

Plaintiffs presented several affidavits in opposition to defendants' summary judgment motion and in support of their motion for summary judgment. One of the plaintiffs, Delbert Chris Childress ("Childress"), provided an affidavit stating that Bryant presented no evidence of the presence of adequate water and sewer systems for the subdivision that Bryant had proposed. Childress also alleged that the Board, in approving the re-zoning, never articulated any reason for disagreeing with the Planning Board's position against the re-zoning. Other affidavits presented by plaintiffs stated that the re-zoning was not in the best interest of the community, would fundamentally change the nature of the surrounding property, and would increase traffic in and around the re-zoned property.

Plaintiffs present the following issues for this Court's review: (1) whether the trial court erred in granting summary judgment in favor

of defendants on the issue of illegal spot zoning; and (2) whether the trial court erred in granting summary judgment in favor of defendants on the issue of illegal contract zoning.

We review a trial court's grant of summary judgment *de novo*. *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [a] party is entitled to a judgment as a matter of law.' " *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c)). "Evidence presented by the parties is viewed in the light most favorable to the non-movant." *Id.*

Re-zoning is considered a legislative act. *Kerik v. Davidson Cty.*, 145 N.C. App. 222, 228, 551 S.E.2d 186, 190 (2001). Accordingly, zoning decisions are typically afforded great deference by reviewing courts and "[w]hen the most that can be said against such ordinances is that whether it was an unreasonable, arbitrary or unequal exercise of power is fairly debatable, the courts will not interfere[]" and in most circumstances, "will not substitute its judgment for that of the legislative body[.]" *In re Appeal of Parker*, 214 N.C. 51, 55, 197 S.E. 706, 709, *appeal dismissed*, 305 U.S. 568 (1938). It therefore follows that the burden of establishing that a zoning decision was invalid is generally on the party challenging such a decision. *Kinney v. Sutton*, 230 N.C. 404, 411, 53 S.E.2d 306, 310 (1949). In situations involving spot zoning, however, the zoning authority must establish a clear showing of a reasonable basis for the action. *Chrismon v. Guilford County*, 322 N.C. 611, 627, 370 S.E.2d 579, 589 (1988).

I.

**[1]** Plaintiffs argue that the trial court erred in determining that the re-zoning was not illegal spot zoning. We disagree.

Spot zoning has been defined as:

A zoning ordinance, or amendment, which singles out and reclassifies a relatively small tract owned by a single person and surrounded by a much larger area uniformly zoned, so as to impose upon the small tract greater restrictions than those imposed upon the larger area, or so as to relieve the small tract from restrictions to which the rest of the area is subjected, is called "spot zoning."

*Blades v. City of Raleigh,* 280 N.C. 531, 549, 187 S.E.2d 35, 45 (1972). Spot zoning is not invalid *per se* in North Carolina so long as the zoning authority made "a clear showing of a reasonable basis for such distinction." *Id.* If a zoning decision is not considered spot zoning then it is presumed valid. *Good Neighbors of S. Davidson v. Town of Denton,* 355 N.C. 254, 258 n.2, 559 S.E.2d 768, 771 n.2 (2002).

Plaintiffs make only a conclusory argument that spot zoning did occur and argue instead that the Board did not have a reasonable basis to engage in spot zoning. Before reaching the issue of whether the Board was reasonable, however, we must first determine whether spot zoning occurred in the instant case.

## A.[1]

In order to determine whether spot zoning has occurred a reviewing court looks to the following factors: (1) whether a relatively small tract has been re-zoned (2) that is surrounded by a much larger area uniformly zoned (3) which imposes on the small tract greater restrictions *or* relieves the small tract from those restrictions. We address each factor in turn.

As to whether the tract is a "small tract" defendants put forth only Wood's legal conclusion that the property in question "would not meet the 'small tract' requirements of spot zoning." Plaintiffs also state a legal conclusion that the property is a small tract. Thus, the parties' affidavits and briefing on this issue are of little guidance. Our Supreme Court, however, has concluded that fifty (50) acres can be considered a "small tract" for purposes of determining whether spot zoning has occurred. *Good Neighbors of S. Davidson,* 355 N.C. at 259, 559 S.E.2d at 772. Thus, defendant Bryant's property, being approximately the same size, meets the first element of spot zoning.

The next issue is whether the re-zoned tract is surrounded by a much larger uniform tract. Reading plaintiffs' affidavits together they assert that defendant Bryant's tract is "surrounded for several miles by a much larger area uniformly zoned [r]ural [a]griculture" property. Defendants argue that there are "sixty-seven areas [*sic*] of non-[r]ural [a]gricultural classification" within a three (3) mile radius of defendant Bryant's property. That, however, does not necessarily address those tracts immediately surrounding the tract in question. A map included in the record reveals that the tracts immediately surrounding defendant Bryant's tract are uniformly zoned as rural agricultural for most of the one mile radius around that property. Given our

requirement to view the evidence in the light most favorable to the non-movant (in this case, plaintiffs), we conclude that the re-zoned tract is surrounded by a larger uniformly zoned property.

As defendant County states in their brief and defendant Bryant cites in his, the third element of spot zoning is found where the re-zoning "*impose[s] upon the small tract greater restrictions* than those imposed upon the larger area, or so as *to relieve the small tract from restrictions*[.]" *Blades*, 280 N.C. at 549, 187 S.E.2d at 45 (emphasis added). Under a literal interpretation of this rule, then, nearly any re-zoning action would satisfy the third element of spot zoning as it would almost certainly either remove or add restrictions to the property. We do not read *Blades* so literally.

In *Good Neighbors*, our Supreme Court found spot zoning where a fifty (50) acre tract, which the Court characterized as a small tract, "was: (1) owned by a single entity, (2) freed of restrictions imposed on neighboring landowners, and (3) surrounded by a uniformly zoned area[.]" *Good Neighbors of S. Davidson*, 355 N.C. at 259, 559 S.E.2d at 772. As we have already discussed, similar factors are present in the instant case which lend support to plaintiffs' conclusion of spot zoning. Important to the finding of spot zoning in *Good Neighbors*, however, was that the land being re-zoned "was transformed from one of *the most restrictive zoning classifications under the county ordi-nance* (residential-agricultural) to one of the most expansive under the town's ordinance (forty acres as heavy industrial and ten acres as light industrial)." *Id.* Such is not the case here.

Re-zoning an area as restricted residential provides far more pro-tections to surrounding rural agricultural property than the heavy industry/light industry re-zoning in *Good Neighbors*. Here, the re-zoned property would be limited to medium density stick built and modular homes, and housing in this zoning district is allowed only where adequate water and sewer or septic systems are available. The restricted residential zoning would not allow for either light or heavy industry to take place on the property. Furthermore, under both the restricted residential and residential agricultural the minimum lot size for a residence is thirty thousand (30,000) square feet where no public water and sewer supply exits. Therefore, defendant Bryant's property has not been relieved from restrictions on lot size to which the rest of the area is subject. Finally, single family homes are allowed in the rural agricultural zoning district as well as in the resi-dential restricted zoning district. Given the similarities between the two zoning classifications, we cannot say that the third element of

spot zoning has been met. Accordingly, the Board's decision is presumed valid, and plaintiffs have not overcome this presumption. Thus, the trial court had a valid basis to grant summary judgment on this ground.

### B.

Additionally, we also hold that even if the Board did engage in spot zoning it had a reasonable basis to do so. Thus, the trial court's grant of summary judgment to defendants was proper on this ground as well. On this alternate ground we must address whether defendants can establish a clear showing of reasonable basis for the rezoning decision. The following factors are relevant in that determination: (1) "the size of the tract in question"; (2) "the compatibility of the disputed zoning action with an existing comprehensive zoning plan"; (3) "the benefits and detriments resulting from the zoning action for the owner of the newly zoned property, his neighbors, and the surrounding community; and" (4) "the relationship between the uses envisioned under the new zoning and the uses currently present in adjacent tracts." *Chrismon*, 322 N.C. at 628, 370 S.E.2d at 589. With these factors in mind, "the criteria are flexible, and the specific analysis used depends on the facts and circumstances of a particular case." *Id.*

As to the first factor, the size of defendant Bryant's property is approximately fifty-one (51) acres. As stated, property of a similar size has been considered a "small tract." *Good Neighbors of S. Davidson*, 355 N.C. at 259, 559 S.E.2d at 772. Additionally, defendant Bryant's property is the only tract of land that has been re-zoned. Under *Good Neighbors*, the size of defendant Bryant's tract and the fact that his was the only piece of property re-zoned weighs against the reasonableness of the Board's decision. *Id.*

The second factor is whether the re-zoning was compatible with the County's existing comprehensive plan. Defendants submitted an affidavit of the County Manager, Wood, that the County "recogniz[ed] that the development of residential subdivisions [will be] an inevitable consequence of the transition of [the] County from a purely rural environment to a mixed use environment[.]" The problem, according to Wood, is that most of the land in the County is still classified as rural agricultural. Therefore, "[i]f no [r]ural [a]gricultural classified land could ever be re-zoned to a [r]esidential classification, then few, if any, new sub-divisions in excess of three (3) lots could ever be built in [the] County." Plaintiffs present no argument on this

issue. We find that Wood's affidavit is well reasoned and reflects the likely transition of the County from a purely rural environment to a mixed use environment. Additionally, Article 6, Section 4 of the Zoning Ordinance recognizes this fact and states, "[i]n order to allow the development of residential subdivisions that are compatible to the rural parts of the County" the Board may re-zone lands classified as rural agricultural to one of the residential zoning classifications. We thus conclude that this re-zoning was compatible with the County's existing comprehensive plan and, thus, this factor weighs in favor of defendants.

The third factor, characterized as the " 'benefits versus detriments' " test, has recently been used by our Supreme Court. The inquiry "is *expressly* limited to examining the ordinance's beneficial and detrimental effects on the property owner, his neighbors, and the surrounding community[]" and merely showing a lack of a detriment will not suffice. *Id.* at 259-60, 559 S.E.2d at 772 (emphasis added) (citing *Chrismon*, 322 N.C. at 628, 370 S.E.2d at 589); *cf. Chrismon*, 322 N.C. at 628, 370 S.E.2d at 589 ("[t]he possible 'factors' are numerous and flexible, and they exist to provide guidelines for a judicial balancing of interests"). The *Good Neighbors* Court relied on *Chrismon* to determine that a reviewing court's analysis would be limited to those three areas and concluded that any benefit to the town could not be considered. *Good Neighbors of S. Davidson*, 355 N.C. at 259, 559 S.E.2d at 772 (specifically holding that an increase in a town's tax base was not relevant).

. The *Chrismon* Court, however, in addition to those items listed in *Good Neighbors*, also held that "it is important, in our view, to consider this in the added context of both the benefits of the rezoning for the surrounding community *and* for the public interest." *Chrismon*, 322 N.C. at 630, 370 S.E.2d at 590 (emphasis added). Indeed, the *Chrismon* Court held that " '[t]he standard is not the advantage or detriment to particular neighboring landowners, but rather the effect upon the entire community as a social, economic and *political unit*.' " *Id.* at 629, 370 S.E.2d at 590 (emphasis added) (quoting *Mansfield & Swett, Inc. v. West Orange*, 120 N.J.L. 145, 150, 198 A. 225, 233 (1938)). To not consider the impact on the political unit, in this case the County, which is in charge of protecting the public good, would defeat the purpose of having local governments making such decisions. *See In re Appeal of Parker*, 214 N.C. at 55, 197 S.E. at 709 (noting in a re-zoning case that legislative bodies are "charged with the primary duty and responsibility of determining whether its action

is in the interest of the public health, safety, morals, or general welfare"). Accordingly, as we review this case *de novo*, we look at all relevant facts and the impact they will have on the entirety of the County, not just the immediate area. *See Chrismon*, 322 N.C. at 628, 370 S.E.2d at 589 (the factors in determining whether a spot zoning is illegal "are flexible, and the specific analysis used depends on the facts and circumstances of a particular case").

In the instant case, defendant Bryant concedes that the re-zoning would create a detriment for the neighbors inasmuch as population density and traffic would increase. Bryant, however, points out that traffic concerns would be the same whether Bryant built homes on the property or manufactured homes were placed on the property. Placing manufactured homes on the property is permissible according to a County summary of permitted uses for rural agriculture property. Specifically, the summary includes the following language:

> Without rezoning, the owner may subdivide the property into up to three lots less than ten acres each, and subdivide the remainder into 10+ acre lots. Each of these lots may be deeded to a second unrelated party, and then subdivided again into up to three lots. This process can be repeated without rezoning, as long as the resulting lots are at least 30,000 square feet (0.69 acre) in area. County staff would have to approve this development without Planning Board review. Depending on acreage, ownership and residency, each lot may have up to three manufactured homes, without rezoning, and with no road requirements—only a 45-foot right-of-way easement. Conceivably, without rezoning, the Bryant property might be developed this way with 40-plus singlewide manufactured homes and no road specifications.

> . . .

> If the tract is rezoned to [r]esidential [r]estricted, a major subdivision of the property would be allowed with Planning Board approval, with lots 30,000 square feet or more. Only one dwelling per lot would be allowed. State requirements for roads would be in place; if subdivided into nine lots or more, all roads must be paved to state specifications. We estimate that the Bryant property could be developed under this zoning for 30 to 40 site-built or modular homes.

As to plaintiffs' concerns regarding water and sewer, both types of housing would require water and sewer services. Some of this, however, merely establishes a lack of a detriment to the community.

The advantage in building homes for the community instead of placing forty (40) manufactured homes on Bryant's property (the number which the property could hold) is that placement of manufactured homes would come without road specifications and without Board involvement. Under the restricted residential classifications, however, the Board must approve the subdivision of the property, North Carolina road requirements would be in effect, and the building would be limited to stick-built and modular homes. Under rural agricultural zoning a number of different styles of homes could be placed on the property from stick-built and modular homes to Class A and Class B manufactured homes. Thus, the restricted residential zoning classification will provide consistency in the development of the subdivision.

Finally, Wood's affidavit recognizes the economic reality in the County inasmuch as there is uncertainty in the tobacco market along with a decline in the price of some agricultural products. Thus, farmers have looked for ways to put their lands previously used for agriculture to more productive uses. One of those uses is to subdivide the property and to sell those lots for the construction of single family homes. An increased number of people encourages more businesses to enter the County, which in turn creates more employment opportunities for the County's residents. In sum, this factor weighs in favor of defendants.

The fourth factor requires this Court to compare the relationship between uses anticipated under the new zoning with land use in adjacent tracts. The intent of the two zoning classifications follow:

> [Rural Agriculture:] The purpose of this district is to maintain a rural development pattern where single-family housing is intermingled with agricultural uses, not having access to public water and sewer systems. This district is also designed to protect rural areas from the intrusion of non-agricultural land uses that could create a nuisance, detract from the quality of life and/or present a danger to the natural environment.

> [Restricted Residential:] The purpose of this district is to stabilize established and planned residential neighborhoods by providing a place for medium density stick built and modular homes, provided that adequate water and sewer systems are available.

CHILDRESS v. YADKIN CTY.

[186 N.C. App. 30 (2007)]

It is settled that "rezoning of a parcel in an old and well-established residential district to a commercial or industrial district would clearly be objectionable[.]" *Chrismon*, 322 N.C. at 631, 370 S.E.2d at 591. This is not the case here. In the instant case, the use of the property to be re-zoned will become residential. The surrounding tracts of land also have a residential component, and under existing zoning regulations defendant Bryant could place manufactured homes on the property, which, as stated above, would have the same effect on the surrounding tracts in terms of population density, water, and sewer concerns.

Furthermore, both the rural agricultural zoning district and the restricted residential zoning district have the same minimum lot size of thirty thousand (30,000) square feet. Therefore, defendant Bryant's property as re-zoned is restricted to the same lot size as existed prior to the re-zoning, and the property has not been relieved from restrictions on lot size to which the rest of the area is subjected. Accordingly, we find that this factor favors defendants.

Plaintiffs rely on *Good Neighbors* and *Budd v. Davie County*, 116 N.C. App. 168, 447 S.E.2d 449 (1994), in support of their argument that the re-zoning in the instant case is a fundamental departure from the zoning in adjacent tracts. We find those cases distinguishable from the instant one. In *Budd*, this Court reviewed a trial court's grant of summary judgment for the defendant county and board of commissioners in a spot zoning case. *Budd*, 116 N.C. App. at 169-70, 447 S.E.2d at 450. In that case, the board had re-zoned the property from rural agricultural to industrial while the surrounding tracts remained rural agricultural. *Id.* at 175, 447 S.E.2d at 453. The envisioned use was sand dredging, which we held to be inconsistent and objectionable with the residential and agricultural use of the surrounding tracts. *Id.* at 177-78, 447 S.E.2d at 455. We fail to see how *Budd* controls this case. Here, the property is not being re-zoned for a commercial or industrial purpose but will maintain its status as a residential area. We similarly do not find *Good Neighbors* persuasive on this issue because it too dealt with a re-zoning from primarily rural uses to industrial uses. *Good Neighbors of S. Davidson*, 355 N.C. at 260-61, 559 S.E.2d at 773.

In summary, then, most of the individual factors deemed relevant to a spot zoning inquiry under *Chrismon* favor defendants. Specifically, we find that: (1) the re-zoning will benefit the community by allowing the growth of the area to be regulated; (2) Bryant's re-

zoned property is compatible with the County's comprehensive plan for the area; and (3) a tract of land zoned as restricted residential is compatible with the surrounding tracts. We find further support for our decision in that the re-zoning is to restricted residential from rural residential, which does not represent the drastic change from rural residential to heavy/light industry found in *Good Neighbors*. Thus, we hold that the Board and the County had a reasonable basis to re-zone the property and did not engage in illegal spot zoning. Plaintiffs' assignments of error as to this issue are rejected.

## II.

[2] Plaintiffs next argue that the trial court erred in granting summary judgment to defendants on the issue of contract zoning. We disagree.

Illegal contract zoning is "a transaction wherein both the landowner who is seeking a certain zoning action and the zoning authority itself undertake reciprocal obligations in the context of a *bilateral* contract." *Chrismon*, 322 N.C. at 635, 370 S.E.2d at 593. Contract zoning is illegal in North Carolina "because it represents an abandonment on the part of the zoning authority of its duty to exercise independent judgment in making zoning decisions." *Id.*

Plaintiffs concede that they did not present direct evidence of a specific bargain between defendants for the use of the re-zoned property. Plaintiffs argue instead that defendant Bryant, by testifying in detail before the Board about the use of the property, and by the Board's vote to re-zone the property, created a contract between him and the Board. Plaintiffs make strenuous arguments in their brief that the Board acted without any reasonable basis or information before they made their decision to re-zone but now argue that the Board had so much information that a contract must have formed. We simply fail to see how both can be true. Because plaintiffs have failed to produce any evidence of a contract or bilateral obligation between defendants, we reject plaintiffs' arguments as to this issue.

## III.

[3] We address plaintiffs' additional arguments in this section. Plaintiffs argue that zoning boards have "an absolute obligation to make appropriate factual findings which clearly demonstrate the reasonableness of the rezoning determination[.]" We disagree.

Plaintiffs rely on *Good Neighbors*. In that case, our Supreme Court stated that there is "no evidence showing that the town's zon-

ing authority considered the relationship between the envisioned uses of the property and the uses present in the adjacent tracts[.]" *Good Neighbors of S. Davidson*, 355 N.C. at 262, 559 S.E.2d at 774. We do not read such language as creating an "absolute obligation" to make factual findings. At best, this could be read as requiring that zoning boards consider evidence related to envisioned use of the property compared with the use of the surrounding tracts. In the instant case, the minutes from the board meeting clearly establish that the Board considered the impact of re-zoning defendant Bryant's property on the surrounding tract.

When a zoning board is acting in a quasi-judicial capacity, however, it is required to make findings of fact. *See Devaney v. City of Burlington*, 143 N.C. App. 334, 337-38, 545 S.E.2d 763, 765 (2001) (a city council's denial of requests by a plaintiff for Manufactured Home Overlay District zoning is quasi-judicial because it involves the application of set policies to an individual situation and requires findings of fact). Such is not the case here. As we stated above, a re-zoning decision is a legislative act. *Kerik*, 145 N.C. App. at 228, 551 S.E.2d at 190.

Plaintiffs also argue that the trial court erred by not making findings as to whether the Board adequately considered the relevant *Chrismon* factors. We disagree. "[I]t is not a part of the function of the [trial] court on a motion for summary judgment to make findings of fact and conclusions of law." *Capps v. City of Raleigh*, 35 N.C. App 290, 292, 241 S.E.2d 527, 528 (1978). Plaintiffs' argument as to this issue is rejected.

Plaintiffs' final argument is that it is "highly significant" that plaintiffs prevailed on their motion for preliminary injunction. Defendant County correctly points out, however, that findings and conclusions made in the grant of an injunction are " 'not authoritative as " 'the law of the case' " for any other purpose, and the judgment or order [is] not *res adjudicata* on' " final hearings. *Schloss v. Jamison*, 258 N.C. 271, 276, 128 S.E.2d 590, 594 (1962) (quoting *Patterson v. Hosiery Mills*, 214 N.C. 806, 810, 200 S.E. 906, 908 (1939)). Plaintiffs' argument as to this issue is also rejected.

IV.

In summary, we conclude that the Board did not engage in spot zoning when it re-zoned defendant Bryant's property. Additionally, we find that even if spot zoning did occur, it was not illegal spot zoning.

We also conclude that defendants did not engage in contract zoning. Finally, plaintiffs' remaining arguments are rejected and thus we affirm the trial court's grant of summary judgment to defendants.

Affirmed.

Judges ELMORE and GEER concur.