CAMBRIDGE SOUTHPORT, LLC, A NORTH CAROLINA LIMITED LIABILITY COMPANY, PLAINTIFF-APPELLEE v. SOUTHEAST BRUNSWICK SANITARY DISTRICT, DEFENDANT-APPELLANT

No. COA11-438

(Filed 17 January 2012)

## 1. Sewage—application for subdivision—default and foreclosure—new developer—original application tolled

The trial court did not err by granting plaintiff's motion for summary judgment where a developer began a townhome development and obtained a permit for wastewater treatment and service; the developer defaulted and the bank foreclosed on the subdivision; plaintiff purchased the subdivision; defendant required plaintiff to reapply and pay the full amount of newly assessed allocation fees; and plaintiff's complaint alleged that this action was unlawful under an Act that extended certain government approvals affecting rest estate development. Construing the Act liberally to affect its purpose, the application constituted a developmental approval as contemplated by the Act, the application was governed by the Act, and summary judgment was proper.

## 2. Appeal and Error—trial court order—portion not appealed from

In an action concerning the tolling of the time for the validity of a wastewater treatment approval for a new subdivision, the issue of the trial court's determination of the end of the tolling period was not appealed by defendant and that portion of the trial court's order was not before the Court of Appeals.

**3. Civil Procedure—summary judgment—findings not required**

The trial court did not err by denying defendant's motion for findings in an action concerning the tolling of the validity period of a wastewater treatment approval where none of the material facts were in dispute and summary judgment was appropriate.

**4. Jurisdiction—standing—real estate development—waste-water treatment approval—subsequent developer**

Plaintiff had standing to enforce its rights under an application for a wastewater treatment approval where plaintiff had purchased the subdivision from the developer who had filed the original application.

Appeal by Defendant from judgment dated 6 January 2011 and order dated 11 February 2011 by Judge Ola M. Lewis in Superior Court, Brunswick County. Heard in the Court of Appeals 11 October 2011.

*Law Offices of G. Grady Richardson, Jr., P.C., by G. Grady Richardson, Jr., for Plaintiff-Appellee.*

*Kenneth P. Andresen, PLLC, by Kenneth P. Andresen, for Defendant-Appellant.*

McGEE, Judge.

Town and Country Developers at Wilmington, Inc. (Town and Country) obtained a loan from Regions Bank (the Bank) to develop an 88-unit townhome subdivision (the subdivision) in Brunswick County. Town and Country signed an Application for Service Capacity Allocation (the Application) on 23 January 2006 with Southeast Brunswick Sanitary District (Defendant), a sanitary district formed and operating in accordance with Article 2 of section 130A of the North Carolina General Statutes. The Application was a necessary prerequisite for Town and Country to obtain wastewater collection and treatment services from Defendant. The Application stated that Town and Country had three years "to complete the project as described in [the] Application or the allocation for service capacity [would] expire and any proceeds [Town and Country had] paid for this allocation approval [would] be non-refundable." Town and Country was required to make a down payment in the amount of $88,000.00 at the time it filed the Application. Town and Country had paid Defendant the amount of $264,000.00 in total impact fees that

were required for Defendant to service the subdivision by 11 October 2006. The North Carolina Division of Water Quality (DWQ), a division of the North Carolina Department of Environment and Natural Resources (DENR), issued a permit (the permit) to Defendant on 4 August 2006, which allowed Defendant to service the subdivision. The permit was effective from 4 August 2006 "until rescinded[,]" and the record is devoid of any evidence that the permit was ever rescinded.

In mid-2008, Town and Country defaulted on its obligations and the Bank foreclosed on the subdivision. Defendant sent the Bank a letter dated 9 December 2009 in which Defendant stated that the allocations for wastewater treatment issued for the subdivision had expired on 23 January 2009, and that the Bank "or another party" could "reapply for a new allocation" for the subdivision. Defendant stated that, under a revised cost schedule for allocations, in order to move forward with the subdivision, new allocation total impact fees would cost $648,000.00. Defendant further stated that the total impact fees of $264,000.00 previously paid by Town and Country were non-refundable and would not apply toward the $648,000.00 that Defendant claimed was owed with "reapplication"

Cambridge Southport, LLC (Plaintiff) is a real estate developer. Plaintiff purchased the subdivision from the Bank on 31 December 2009 with the intention of moving forward with Town and Country's original plan for the subdivision. Plaintiff contends, and Defendant does not dispute, that prior to foreclosure, Town and Country "completely built, installed and implemented all of the infrastructure necessary to service the wastewater needs of the entire [s]ubdivision[.]" DWQ received a "final engineering certification for the [subdivision] on March 15, 2007[,]" and accepted this certification. Initially, Plaintiff attempted to obtain direct approval from Defendant for a waiver of the "new" allocation fees. Though Defendant's initial response to Plaintiff was optimistic, Defendant ultimately decided, at a 23 February 2010 Board of Commissioners meeting, to require Plaintiff to reapply and to pay the full amount of the newly assessed allocation fees.

Plaintiff filed an amended complaint dated 29 July 2010 alleging that Defendant's action in requiring Plaintiff to reapply for wastewater service capacity allocation was unlawful. Defendant answered and counterclaimed. In a motion dated 12 October 2010, Plaintiff moved for "Summary Judgment and/or Declaratory Judgment." Plaintiff contended that the North Carolina General Assembly, through 2009 N.C. Session Law ch. 406 (as amended by 2009 N.C.

Session Law ch. 484, 2009 N.C. Session Law ch. 550, 2009 N.C. Session Law ch. 572, and 2010 N.C. Session Law ch. 177), "An Act to Extend Certain Government Approvals Affecting the Development of Real Property Within the State" (the Act), "applies to the [subdivision] and entirely precludes Defendant's [a]dditional [f]ees" as a matter of law.

The trial court granted Plaintiff's motion for summary judgment on 6 January 2011, ruling that the Act, as amended, applied to the Application and "precluded and prohibited" Defendant from charging Plaintiff additional fees. Defendant appeals.

I.

[1] Defendant argues that the trial court "erred in granting . . . Plaintiff's motion for summary judgment and/or declaratory judgment." We disagree.

Defendant contends that the Application is not subject to the Act because it was only a contract between Defendant and Town and Country. Defendant argues that the Act could not serve to toll the three-year validity period included in the terms of the Application. The Act provides:

> SECTION 1. This act shall be known and may be cited as the "Permit Extension Act of 2009."
>
> SECTION 2. The General Assembly makes the following findings:
>
> (1) There exists a state of economic emergency in the State of North Carolina and the nation, which has drastically affected various segments of the North Carolina economy, but none as severely as the State's banking, real estate, and construction sectors.
>
> (2) The real estate finance sector of the economy is in severe decline due to the creation, bundling, and widespread selling of leveraged securities, such as credit default swaps, and due to excessive defaults on sub-prime mortgages and the resultant foreclosures on a vast scale, thereby widening the mortgage finance crisis. The extreme tightening of lending standards for home buyers and other real estate borrowers has reduced access to the capital markets.
>
> (3) As a result of the crisis in the real estate finance sector of the economy, *real estate developers and redevelopers,* including home builders, and commercial, office, and industrial developers, *have experienced an industry-wide decline,*

including reduced demand, cancelled orders, declining sales and rentals, price reductions, increased inventory, fewer buyers who qualify to purchase homes, layoffs, and scaled back growth plans.

. . . .

(5) The process of obtaining the myriad of other government approvals, such as wetlands permits, treatment works approvals, *on-site wastewater disposal permits*, stream encroachment permits, flood hazard area permits, highway access permits, and numerous waivers and variances, can be difficult and expensive; further, changes in the law can render these approvals, if expired or lapsed, difficult to renew or reobtain.

(6) County and municipal governments, including local sewer and water authorities, obtain permits and approvals from State government agencies, particularly the Department of Environment and Natural Resources, which permits and approvals may expire or lapse due to the state of the economy and the inability of both the public sector and the private sector to proceed with projects authorized by the permit or approval.

. . . .

(8) The current national *recession has severely weakened the building industry,* and many landowners and *developers are seeing their life's work destroyed* by the lack of credit and dearth of buyers and tenants due to the crisis in real estate financing and the building industry, uncertainty over the state of the economy, and increasing levels of unemployment in the construction industry.

(9) *The construction industry and related trades are sustaining severe economic losses, and the lapsing of government development approvals would exacerbate, if not addressed, those losses.*

. . . .

(11) Due to the current inability of builders and their purchasers to obtain financing under existing economic conditions, more and more once-approved permits are expiring or lapsing, and, as these approvals lapse, lenders must reappraise

and thereafter substantially lower real estate valuations established in conjunction with approved projects, thereby requiring the reclassification of numerous loans, which, in turn, affects the stability of the banking system and reduces the funds available for future lending, thus creating more severe restrictions on credit and leading to a vicious cycle of default.

(12) As a result of the continued downturn of the economy and the continued expiration of approvals that were granted by State and local governments, it is possible that thousands of government actions will be undone by the passage of time.

(13) Obtaining an extension of an approval pursuant to existing statutory or regulatory provisions can be both costly in terms of time and financial resources and insufficient to cope with the extent of the present financial conditions; moreover, the costs imposed fall on the public as well as the private sector.

(14) *It is the purpose of this act to prevent the wholesale abandonment of already approved projects and activities due to the present unfavorable economic conditions by tolling the term of these approvals for a finite period of time as the economy improves, thereby preventing a waste of public and private resources.*

SECTION 3. Definitions.—As used in this act, the following definitions apply:

(1) Development approval.—*Any of the following approvals issued by* the State, any agency or subdivision of the State, or *any unit of local government, regardless of the form of the approval,* that are for the development of land or *for the provision of water or wastewater services by a government entity:*

. . . .

f. Any water or wastewater permit issued under Article 10 or Article 11 of Chapter 130A of the General Statutes.

. . . .

SECTION 4. For any development approval that is current and valid at any point during the period beginning January 1, 2008, and ending December 31, 2010, the running of the period of

the development approval and any associated vested right under G.S. 153A-344.1 or G.S. 160A-385.1 is suspended during the period beginning January 1, 2008, and ending December 31, 2011.

. . . .

SECTION 5. This act shall not be construed or implemented to:

. . . .

(8) [as added by 2010-177] Modify any person's obligations or impair the rights of any party under contract, including bond or other similar undertaking.

(9) [as added by 2010-177] Authorize the charging of a water or wastewater tap fee that has been previously paid in full for a project subject to a development approval.

SECTION 5.1, as added by 2009-572, s. 2:

(a) This act does not revive a vested right to the water or sewer allocation associated with a development approval that expired between January 1, 2008, and August 5, 2009, and is revived by the operation of this act if both of the following conditions are met:

(1) The water or sewer capacity was reallocated to other development projects prior to August 5, 2009, based upon the expiration of the development approval.

(2) There is not sufficient supply or treatment capacity to accommodate the project that is the subject of the revived development approval.

(b) A person whose development approval is revived under this act but whose water or sewer allocation is not revived under this section must be given first priority if additional supply or treatment capacity becomes available.

. . . .

SECTION 7. The provisions of this act *shall be liberally construed to effectuate the purposes of this act.*

2010 N.C. Session Law ch. 177 (ratified 10 July 2010) (emphases added).

Section 2(14) of the Act clearly states that the purpose of the Act is to prevent abandonment of already approved projects by tolling the

term of government approvals, including approvals granted by municipal governmental entities. Section 7 states: "The provisions of this act shall be liberally construed to effectuate the purposes of this act." Section 5.1(a) clearly anticipates that "sewer allocation associated with a development approval that expired between January 1, 2008, and August 5, 2009" is covered under the Act. Section 5.1(a)(1) further states that the only conditions under which the Act will not serve to revive or extend sewer allocation approval is if the "sewer capacity was reallocated to other development projects prior to August 5, 2009" and there is not sufficient treatment capacity to provide for the project covered by the expired approval.

In the present case, Town and Country applied to Defendant for wastewater treatment allocation for the subdivision. Town and Country completed the necessary tasks and submitted the necessary documents to receive all required permits and authorizations. Town and Country completed the necessary wastewater treatment infrastructure for the entire subdivision and received DWQ certification for the wastewater treatment system. Town and Country received the necessary approvals to begin construction on the subdivision townhomes, and completed some townhomes before it went into default. Certificates of Occupancy were issued by Brunswick County for several completed townhomes in the subdivision. Certificates of Occupancy will not issue unless the necessary permits have been obtained, and the homes have passed inspection. Further, Brunswick County will not issue a Certificate of Occupancy without Defendant's approval. Defendant gave its approval, and Certificates of Occupancy were issued for several townhomes in the subdivision before Town and Country defaulted. Defendant has been providing wastewater treatment for those townhomes without issue.

After purchasing the subdivision from the Bank, Plaintiff proceeded with construction of the remaining townhomes according to the original plan submitted by Town and Country and approved by the relevant authorities, including Defendant. Upon completion of a townhome in the subdivision, Plaintiff requested the appropriate inspections and a Certificate of Occupancy from Brunswick County. Defendant refused to allow the issuance of a Certificate of Occupancy because Defendant contended that the approval for wastewater allocation originally granted to Town and Country had expired on 23 January 2009. Defendant stated that Plaintiff was required to pay new wastewater allocation fees for any new structures Plaintiff wanted connected to Defendant's wastewater treat-

ment facility, and Defendant would not approve any new Certificates of Occupancy until Plaintiff paid the new wastewater allocation fees.

Defendant contends the Application is not part of any "developmental approval" as defined in the Act and, thus, the Act cannot serve to toll the three-year completion deadline included in the Application. Defendant contends that the Application was simply a contract for service between Defendant and Town and Country. Defendant's reading of "developmental approval" is too narrow. First, the clearly stated purpose of the Act is to encourage and facilitate the completion of development projects, such as the subdivision, by tolling the expiration of state and local government approvals necessary for the completion of these projects. Second, Section 7 of the Act states: "The provisions of this act shall be liberally construed to effectuate the purposes of this act." Third, the Act was clearly intended to cover authorizations for wastewater treatment, evidenced by Section 3(1)(f), and was further intended to cover wastewater capacity allocation, evidenced by Section 5.1. Fourth, were the provisions of the Act limited to the permit obtained by Defendant from DENR, as Defendant contends, Section 5.1, and in most instances Section 3(1)(f), would have no effect. Defendant and other municipal entities in control of wastewater capacity allocation and treatment could thwart the purpose of the Act by preventing the completion of development projects approved during the tolling period included in the Act. Fifth, by refusing to recognize the Application as part of a developmental approval, and by refusing to recognize that the expiration period had been tolled, Defendant is preventing the issuance of other developmental approvals for the subdivision that are clearly covered by the Act. Due to Defendant's refusal to authorize, no Certificates of Occupancy may be issued, no townhomes may be inhabited and, therefore, there is no point in further developing the subdivision.

Construing the provisions of the Act liberally to effect the purpose of the Act, we hold that the Application constitutes a developmental approval as contemplated by the Act and, therefore, the Application is governed by the Act.

II.

[2] The Application for wastewater capacity allocation was, by its terms, valid between 23 January 2006 and 23 January 2009. The Act tolls terminations on authorizations that were valid at any point during the period beginning 1 January 2008, and ending 31 December 2010. The trial court ordered:

> Defendant cannot assert its Position against Plaintiff, Plaintiff's Subdivision and the Application until after 23 January 2013, if at all. This date is 1 year and 23 days after the expiration of the . . . Act's protective tolling period that ends 31 December 2011 and represents the time remaining on the Application as of 1 January 2008.

Because Defendant did not appeal the trial court's determination of the date of the end of the tolling period, this portion of the trial court's order is not before us. N.C.R. App. P. 28(b)(6).

III.

[3] Defendant argues that the trial court erred in denying Defendant's motion for findings of fact pursuant to Rule 52 of the North Carolina Rules of Civil Procedure. N.C. Gen. Stat. § 1A-1, Rule 52. The trial court heard Plaintiff's motion for "summary and/or declaratory judgment."

> Summary judgment may be granted in a declaratory judgment proceeding where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law[.] On appeal, this Court's standard of review involves a two-step determination of whether (1) the relevant evidence establishes the absence of a genuine issue as to any material fact, and (2) either party is entitled to judgment as a matter of law.

*Production Sys., Inc. v. Amerisure Ins. Co.*, 167 N.C. App. 601, 604, 605 S.E.2d 663, 665 (2004) (citations and quotation marks omitted). " '[I]t is not a part of the function of the [trial] court on a motion for summary judgment to make findings of fact and conclusions of law.' " *Childress v. Yadkin Cty.*, 186 N.C. App. 30, 43, 650 S.E.2d 55, 64 (2007) (citation omitted). Though findings and conclusions may be necessary in certain situations, the present case is not one of those situations.

> [I]n rare situations it can be helpful for the trial court to set out the *undisputed* facts which form the basis for his judgment. When that appears helpful or necessary, the court should let the judgment show that the facts set out therein are the undisputed facts. The judgment now before us does not so indicate. It does appear, however, that the *material* facts set out are not in dispute.

*Capps v. City of Raleigh*, 35 N.C. App. 290, 292, 241 S.E.2d 527, 529 (1978). None of the material facts are in dispute. There remains only a question of law: whether the provisions of the Act apply to the Application. Having determined that the provisions of the Act do apply to the Application, and that the expiration of the Application was therefore tolled, we hold that summary judgment was appropriate and, in this instance, no findings of fact were required.

[4] Defendant argues that Plaintiff lacked standing to bring this action. Defendant's argument concerning standing is predicated on the presumption that the Application was solely a contract between Defendant and Town and Country and conferred no rights upon Plaintiff when Plaintiff purchased the subdivision. Having held that the Act served to toll the expiration of the Application, and that Plaintiff is entitled to proceed with development of the subdivision pursuant to the tolled terms of the Application, we also hold that Plaintiff had standing to enforce its rights under the Application. *Slaughter v. Swicegood*, 162 N.C. App. 457, 463-64, 591 S.E.2d 577, 582 (2003).

Affirmed.

Judges HUNTER, Robert C. and CALABRIA concur.